MARTIN, executrix, *v.* POLLOCK, tax-collector, *et al.*

1. The act approved August 19, 1913 (Acts 1913, p. 91), called the inheritance-tax act, is not violative of paragraph 2 of section 1 of article 7 of the constitution of the State of Georgia, as the tax provided for in the act is not a tax upon property, but is rather in the nature of a tax upon a privilege—upon the right to receive property transmitted to one by devise or inheritance, or by deed, grant, or gift intended to take effect in possession or enjoyment after the death of the grantor or donor.

2. Under a proper construction of its terms, section 11 of the act just referred to, providing for the appraisement of the property to be taxed under the provisions of that act, confers upon persons interested the privilege of a hearing before the appraisers, and is not violative of the due-process-of-law clause of the State and Federal constitutions.

3. Upon a transfer of property taxable under the inheritance-tax act, if the property passing is to be divided into two or more estates, as an estate for years or for life and a remainder, then a deduction of $5,000 shall be made from each estate in arriving at the value of the property to be taxed. And where there is a remainder estate, it should be reduced to its present value and the deduction of the amount of exemption made from that present value, and the tax should be collected at once; that is, not postponed to the termination of the estate in possession.

(*a*) For the purposes of taxation under the act, the remainder estate should be estimated, in ascertaining its present value, as if the entire corpus were to remain undisposed of.

JANUARY 18, 1916.

Petition for injunction. Before Judge Graham. Pulaski superior court. January 21, 1915.

J. H. Martin died testate. His estate was divided into a life-estate devised to his wife, who survived him, with remainder to his daughter, these being the only two persons interested in his estate. The wife was named as executrix; and she and the daughter filed a petition against the tax-collector and the ordinary of Pulaski county, praying for injunction to restrain the defendants from further proceeding to collect the amount of taxes claimed to be due as an inheritance tax under the provisions of the act approved August 19, 1913 (Acts 1913, p. 91), which is an act to create, provide for, and require the payment of a tax on inheritances, etc.; and that the court construe the will and give direction to petitioners relatively to the payment of the inheritance tax. The case at the interlocutory hearing was submitted upon the pleadings and the following statement of facts agreed upon by the parties:

"J. J. Pollock is tax-collector of Pulaski county, and H. A. Haskins is ordinary of that county. J. H. Martin of Pulaski county died testate on September 14, 1913, a copy of his last will and testament being hereto attached, marked Exhibit A. On the ......day of January, 1914, Mrs. A. S. Martin, who is the widow of the said J. H. Martin, and Elouise W. Martin, who is the daughter of the said J. H. Martin, the two being the only heirs at law of the said J. H. Martin, and the said J. J. Pollock as tax-collector of Pulaski county, entered into an agreement by which the said H. A. Haskins as ordinary of Pulaski county should appraise the estate of the said J. H. Martin. . . Under the authority given him by an act of the General Assembly of Georgia, to be found beginning on page 91 and ending on page 98 of Georgia Laws for the year 1913, approved August, 1913, which is hereinafter referred to as the inheritance-tax act, and under the authority given him in the agreement hereto attached marked Exhibit B, the said H. A. Haskins as ordinary of Pulaski county proceeded to appraise and did appraise the estate of the said J. H. Martin and determine the value thereof to be $16,957.52. The said Mrs. A. S. Martin, as the executrix of the last will and testament of the said J. H. Martin, and individually, and the said Elouise W. Martin, in agreeing that the said H. A. Haskins as ordinary of Pulaski county should appraise the estate of the said J. H. Martin, dispensed with the appointment of appraisers. On the 14th day of September, 1913, the said Mrs. A. S. Martin was 70 years of age. The said H. A. Haskins as ordinary aforesaid, in determining the value of the life and remainder estates for the purpose of taxation under the said inheritance-tax act, deducted from the said appraised value of the estate, to wit, $16,957.52, $5,000.00, and ascertained, for the purpose of taxation under said inheritance-tax act, that the value of the said life-estate of the said Mrs. A. S. Martin was $4,-762.68, and that the value of the remainder estate, or of whatever estate was coming to the said Elouise W. Martin under the said will of the said J. H. Martin, was $7,194.84, and that the inheritance tax due upon the property coming to the said Mrs. A. S. Martin was $47.62, and that the inheritance taxes due upon the property coming to the said Elouise W. Martin was $71.94. That demand was made upon the said executrix for the payment of the aforesaid inheritance tax, and that the said demand was refused, and that

the said J. J. Pollock as tax-collector of Pulaski county has threatened to levy an execution upon a sufficiency of the estate of the said J. H. Martin to make said inheritance taxes.     That all ad valorem tax due the State of Georgia by the estate of J. H. Martin for the years 1913 and 1914 have been paid."

The will of J. H. Martin need not be set forth here, as so much of the same as is material is set forth in the opinion.

The judge dissolved the restraining order and denied the injunction.   The executrix excepted.

*H. F. Lawson,* for plaintiff.

*Warren Grice* and *W. A. Wooten,* for defendants.

BECK, J.   (After stating the foregoing facts.)

1.   The judgment of the court refusing the injunction is excepted to upon the ground, among others, that the court erred in refusing to hold the act of the General Assembly referred to. in the statement of facts, generally called the inheritance-tax act, violative of paragraph 2 of section 1 of article 7 of the constitution of the State of Georgia (Civil Code, § 6552), which paragraph provides that the levy of taxes on property for any one year by the General Assembly for all purposes, except to provide for repelling invasion, suppressing insurrection, or defending the State in time of war, shall not exceed 5 mills on each dollar of the value of the property taxable in the State; it appearing from the facts contained in the statement agreed upon by the parties that the estate of J. H. Martin had paid all ad valorem taxes due to the State of Georgia for the years 1913 and 1914. . The objection, that the tax against the collection of which injunction is sought is an additional tax imposed upon property after there has been paid upon it the full tax to the constitutional limit of 5 mills, is without merit.   This is not a tax upon property.   It is rather in the nature of a tax upon a privilege—upon the right to receive property transmitted to one by devise or inheritance, or by deed, grant, or gift intended to take effect in possession or enjoyment after the death of the grantor or donor.   The point raised by this attack upon the constitutionality of the act is without novelty, and requires no discussion.   It has been fully discussed and settled by courts of other jurisdictions, and with the reasoning of those courts tending to a conclusion which sustains the act we are satisfied.   In Ross on Inheritance Taxation, 20-22, the writer says: "The constitutionality of the

general principles of inheritance taxation has been affirmed by a multitude of decisions, so that the competency of Congress, or the legislatures of the several States, to impose an inheritance tax is universally conceded. . . The general doctrine that a State or the United States may raise revenue, and in bountiful quantities, by levying tribute upon estates in the course of transmission from decedents to their successors, is no longer doubted; and most of the attacks now made upon inheritance taxation are upon other than constitutional grounds. . . An excise upon the right to receive property by devise or inheritance is a tax within the meaning of the constitutional provisions that taxes shall be levied for public purposes only. But since an inheritance tax is imposed upon the succession rather than upon the property itself, it has been held not to contravene a constitutional limitation upon the rate of taxation of property for state purposes." And in another paragraph (page 25) the writer just quoted says, speaking of inheritance taxes, "they are imposed on the transmission of or succession to property rather than on the property itself."

2.  Another ground of exception to the judgment is that the court erred in refusing to hold the inheritance-tax act generally, and section 11 of the act particularly, violative of the due-process-of-law clause of the State and Federal constitutions, as contained in paragraph 3, section 1, article 1 of the constitution of the State of Georgia, and article 5 of article 8 of the constitution of the United States (Civil Code, §§ 6359, 6688). We do not think this constitutional objection is valid, in view of the provisions of the act and the particular section thereof referred to. Section 11 of the inheritance-tax act reads as follows: "That the ordinary of the county, having jurisdiction of the administration of the estate of the decedent, shall, on application of any interested party or upon his own motion, and whenever occasion may require, appoint three disinterested persons as appraisers to fix the value of property subject to said tax; that the appraisers, being first sworn, shall give notice to all persons known to have a claim in the property appraised, including the executor, administrator, or trustee, and the tax-collector of the county, of the time and place when they will appraise the same, such notice being given by advertisement in some newspaper having general circulation in the county which has jurisdiction of the administration of the estate, that at such

time and place they shall appraise such property at its actual or market value at the time of the death of the decedent, and shall thereupon make report thereof in writing to said ordinary. . . Provided, however, upon the agreement of the parties interested to dispense with the appointment of appraisers, the ordinary him-self shall appraise the property and make and file a report thereof." Under the terms of the section just quoted, express provision is . made for the appointment of disinterested persons as appraisers to fix the value of the property subject to said tax. It provides also for the administering of the oath to the appraisers, and makes it incumbent upon them to give notice to all persons known to have a claim in the property appraised, including the executor, admin-istrator, or trustee, of the time and place when the appraisement will be made. Under these express provisions, the right of a hear-ing, though not in terms provided for, is necessarily implied. Un-der those provisions the parties having a claim in the property to be appraised, and the tax-collector of the county, would have the right to appear and submit evidence of the actual or market value of the property at the time of the death of the decedent. And if we are right in this inference that from the terms of act the parties who are interested in the estate may claim, as a matter of right, the privilege of appearing before the appraisers and submitting evi-dence as to the value of the property, then the complaint of the petitioner that the act does not afford due process of law is without merit.

3. Another exception to the judgment of the court below is based upon the contention that the court erred in finding that the ordinary correctly calculated the amount of inheritance tax due upon the life-estate of Mrs. A. S. Martin, and the amount due upon the remainder estate of Elouise W. Martin, the daughter of the testator; the tax found to be due by Mrs. Martin, the life-tenant, being the sum of $47.62, whereas the plaintiff insists that the sum due is only $11.01; and the tax found to be due upon the remainder estate being $71.94, whereas petitioner claims that the correct sum is $58.55.

Without attempting to make any calculation of the amount of taxes due upon the life-estate and the remainder estate under the provisions of the inheritance-tax act, we are of the opinion that the amounts found to be due are erroneous; the calculations as to the

amounts due being based upon an erroneous holding as to the deductions that should be made from the amounts of the inheritances. Subsection 1 of section 1 of the act provides: "Upon a transfer taxable under this act, of property or any beneficial interest therein, of an amount in excess of the value of five thousand ($5,000) dollars, to any father, mother, husband, wife, child, brother, sister, . . or to any lineal descendant of such decedent, grantor, donor or vendor, born in lawful wedlock, the tax shall be at the rate of 1 per cent. on any amount in excess of five thousand ($5,000) dollars." In the case at bar, under the provisions of this part of the act just quoted, the ordinary appraised the entire estate of the decedent at $16,957.52 (the parties interested in the estate agreeing that the ordinary should make the appraisement) ; and in determining the value of the life-estate and the remainder estate for the purposes of taxation under the act, he deducted from the appraised value of the entire estate $5,000.00, and determined that for the purposes of taxation under the act the value of the life-estate was $4,762.68 and the value of the remainder estate was $7,194.84. We do not think that the proper basis of calculation was adopted. Under the terms of the will of the decedent, after the deduction of certain specific legacies, a life-estate was created in Mrs. Martin, with remainder to the daughter, Elouise Martin. So far as necessary to be set forth here, the will makes the following provisions: Item 4. "All my property both personal and real, without exception or reservation, of which I may die seized and possessed, I give to my wife, Armittie S. Martin, for and during her natural life, and at her death whatever of my estate is left undisposed of is to belong to my daughter Elouise W. Martin absolutely and unconditionally." Item 5. "I desire that my wife during her life shall make such provisions for the support and maintenance of my daughter as she deems right and proper out of my estate, this matter to be left entirely in the discretion of my wife, without any interference of any kind by my daughter or any one else for any purpose whatever." Item 6. "My wife is to have absolute and unconditional control and management of all my estate during her life, and is hereby expressly authorized and empowered to make such disposition of the same or any part thereof as she sees fit and desires by sale, public or private, or otherwise as she pleases, without any application or order from any court whatever, and

without any publications or notices of any kind." Item 7. "On the death of my wife, my daughter is hereby authorized and empowered to take charge of any possession of all my estate, both real and personal, remaining undisposed of, and to have and to hold the same forever as her own individual property to do as she pleases with, and my daughter is authorized and empowered to just simply take possession of said property without resorting to legal proceedings in any court to do so."

Conceding that under these terms of the will the amount which the remainderman will receive is, as claimed by the plaintiff, uncertain and contingent, and that it is impossible to determine just what the remainder estate would consist of, or what the value of it would be upon the termination of the life-estate, we do not think that the estate was for that reason exempt from the inheritance tax; but we do agree with the contention that the tax should have been imposed only on the excess of the value of the remainder estate and of the life-estate above $5,000; in other words, that where there is a life-estate and a remainder interest created, as in the present case, the amount of $5,000 should be deducted from each of the two estates, and not merely the single sum of $5,000 from the entire estate left by the decedent. The courts of other jurisdictions have not been uniform in construing provisions in their inheritance-tax laws similar to that contained in the part of subsection 1 quoted above; but we think that the reasoning of those courts giving to such provision in the inheritance-tax laws the construction which we are placing upon it is the sounder. The purpose of the act, or that part of it now immediately under consideration, was to impose a tax upon every transfer of property taxable under the act, or any beneficial interest therein, to any person falling within the classes enumerated therein, where it was of a value that exceeded the amount of $5,000; or, in other words, that $5,000 was to be deducted from the amount of the value of the property transferred and taxable under the act, and that the tax should be at the rate of one per cent. on the amount in excess of $5,000. Now, since under this will the estate of the decedent was carved into two estates, the life-estate and the remainder estate, the transfer taxable under the act, so far as relates to the life-tenant, was the value of the life-estate in excess of $5,000; and the same is true as to the remainder estate. The court, therefore,

erred in finding that the ordinary had made his calculation upon the proper basis. The language of the section last quoted above may be somewhat involved and not altogether clear, but we think that it is a fair and reasonable construction to hold that its provisions contemplate that the beneficiary under a will or a distributee of an estate receiving property taxable under the act may receive at least $5,000 worth of property free from the inheritance tax.

And where, as in the present case, the right of disposition of the entire estate is given to the tenant for life, so that she may consume and dispose of a part or all of the estate left by the decedent, and it can not be determined how much of it will be consumed or whether any of it will be consumed, then we are of the opinion that for the purposes of taxation under this act, in determining the value of the remainder estate, it should be found that the entire estate will pass to the remainder and that none of it will be consumed or disposed of by the life-tenant. This will work no hardship or inequality on the remainderman, because she will be benefited by the failure of the life-tenant to consume or dispose of any part of the corpus of the estate. Any other ruling would enable the testator, however large and valuable the estate which he might transfer by will, to defeat the purposes of tax measures of this character by introducing the element of uncertainty into the value of the estates which he might create in the property devised.

*Judgment reversed. All the Justices concur, except Fish, C. J., absent.*