HOME INSURANCE COMPANY *v.* CITY COUNCIL OF AUGUSTA.

1. Where a statute of, or authority exercised under, a State is drawn in question, on the ground of its repugnance to the Constitution of the United States, or a right is claimed under that instrument, the decision of a State court in favor of the validity of such statute or authority, or adverse to the right so claimed, can be reviewed here.

2. An insurance company conformed to the requirements of the act of the legislature of Georgia, and received from the comptroller-general a certificate authorizing it to transact business in that State for one year from Jan. 1, 1874. That act does not, expressly or by implication, limit or restrain the exercise of the taxing power of the State, or of any municipality. An ordinance of the city council of Augusta, passed Jan. 5, 1874, imposed from that date an annual license tax "on each and every fire, marine, or accidental insurance company located, having an office or doing business within" that city. *Held*, that the ordinance is not in violation of that clause of the Constitution of the United States which declares that "no State shall pass any law impairing the obligations of contracts."

ERROR to the Supreme Court of the State of Georgia.

A statute of the legislature of Georgia, to regulate insurance business and insurance agencies in the State of Georgia, passed March 19, 1869, enacts as follows: —

" SECTION 1. That it shall not be lawful for any insurance company, or agent of the same, excepting masonic, odd fellows, and religious mutual aid societies, already chartered by this. State, to transact any business of insurance, without first procuring a certificate of authority from the comptroller-general of this State; and, before obtaining such certificate, such company must furnish the comptroller-general with a statement, under oath, specifying, —

" *First,* The name and locality of the company.

" *Second,* The condition of such company on the thirty-first day of December then next preceding, exhibiting the following facts and items, in the following form : namely, — 1st, capital stock; 2d, assets, detailed ; 3d, liabilities, detailed ; 4th, income preceding year, detailed ; 5th, expenditures preceding year, detailed ; 6th, greatest risk ; 7th, certified copy of charter.

" SECT. 2. The said statement shall be filed in the office of the comptroller-general, and the company shall show possession of at least $100,000 cash capital.

" SECT. 3. Upon filing such statement as aforesaid, the comptroller-general, when satisfied that the statement is correct, and that the company has fully complied with the provisions of this act, shall issue a certificate of authority to transact business of insurance in this State to the company applying for the same, and to all agents such company may appoint and commission.

" SECT. 4. Said statement must be renewed annually on the first day of January in each year, or within sixty days thereafter ; and if the comptroller-general is satisfied that the capital, securities, and investments remain secured as at first, he shall furnish a renewal of the certificates. Insurance companies shall not be required to furnish but the single statement annually. The comptroller-general shall be entitled to a fee, for examining and filing each statement of such companies, of seven and one-half dollars, and for certificates to agents, of two and one-half dollars, — which fee shall be paid by the company or agent filing said statements, and to whom certificates are to be issued."

' " SECT. 6. That all persons violating the provisions of this act shall be liable to indictment, and, on conviction, shall be fined not less than one hundred dollars, nor more than five hundred dollars, at the discretion of the jury and court trying the same."

The plaintiff in error, a corporation organized under the laws of the State of New York, had an agency in the city of Augusta. On furnishing the required statement, it received

the certificate of the comptroller-general authorizing it to conduct the business of insurance in that city for one year from Jan. 1, 1874. Under a general law, it paid a tax of one per cent upon the gross amount of premiums received; and, under a city ordinance, a tax of one and a quarter per cent thereon.

On the 5th of January, 1874, the city council passed an ordinance, the first section of which provides, that, from and after that date, " the annual license tax on insurance companies shall be as follows : 1. On each and every life-insurance company located, having an office or doing business within the city of Augusta, $100. 2. On each and every fire, marine, or accidental insurance company located, having an office or doing business within the city of Augusta, $250.

The legislature, by an act passed Feb. 26, 1874, validated all existing ordinances of said city council imposing taxes for the support of its municipal government for 1874. Thereupon the plaintiff in error filed its bill in the Superior Court of Richmond County, to enjoin the council from collecting the license tax for that year imposed upon it, and claimed, as a ground of relief, that said ordinance impaired the obligation of the contract between the company and the State, whereby the former was authorized to transact the business of insurance therein, and thus violated that clause of the Constitution of the United States which declares that no State, and, *a fortiori*, no political subdivision of a State, " shall pass any law impairing the obligation of contracts."

The Superior Court refused the injunction prayed for, and dismissed the bill; and the decree having been affirmed by the Supreme Court of the State, the company brought the case here.

*Mr. William M. Evarts*, and *Mr. Salem Dutcher*, for the plaintiff in error.

An ordinance of a municipal corporation of a State is the exercise of an authority under that State. *Weston* v. *City Council of Charleston*, 2 Pet. 449.

A final judgment in any suit in the highest court of a State, in which a decision could be had affirming the validity of an ordinance of a municipal corporation of that State, which was

drawn in question on the ground of its repugnance to the Constitution of the United States, is subject to review by this court.   *Weston* v. *City Council of Charleston, supra; Osborne* v. *Mobile,* 16 Wall. 479; *Cannon* v. *New Orleans,* 20 id. 577. The ordinance was the point on which the controversy turned, and the decision of the Supreme Court of the State was in favor of its validity.

The compliance of the company with the terms of the act of 1869 and the action of the State thereunder, form a contract within the meaning of art. 1, sect. 10, clause 1, of the Constitution of the United States.   It is identical in principle with, although differing in form from, that in *Fletcher* v. *Peck,* 6 Cranch, 87.   The considerations are, to the former, authority to do business in the State for a specified period; to the latter, the public advantages arising from the operations in the State of a corporation coming up to the prescribed standard of usefulness, solvency, and reliability.

"The word 'license' means permission or authority; and a license to do any particular thing is a permission or authority to do that thing, and, if granted by a person having power to grant it, transfers to the grantee the right to do whatever it purposes to authorize.   It certainly transfers to him all the right which the grantor can transfer to do what is within the terms of the license."   *Gibbons* v. *Ogden,* 9 Wheat. 563 (580); *State Tonnage Tax Cases,* 12 Wall. 204 (215).   A license is a contract.   "It is a right given by some competent authority to do an act which, without such authority, would be illegal." Bouvier, Law Dict.; *Mayor, &c. of Rome* v. *Lumpkin,* 5 Ga. 447; *Chastain* v. *Town Council of Calhoun,* 29 id. 333; *Adams* v. *Mayor of Albany,* 29 id. 56; *Wood* v. *City of Brooklyn,* 14 Barb. 425; *Martin* v. *O'Brien,* 34 Miss. 21; *Leonard* v. *City of Canton,* 35 id. 189; *Boyd and Jackson* v. *The State,* 46 Ala. 329; *Martin* v. *O'Brien,* 34 Miss. 21; *Philadelphia Association* v. *Wood,* 39 Penn. St. 73.

It is submitted that the license tax imposed after the required authority had been conferred by the State, on a full compliance by the company with the stipulated conditions in question, cannot be sustained, and that the city could not, during the year 1874, limit, burden, or obstruct, in any way, the

exercise by the company of its right to transact its legitimate business, — a right secured by the contract with the State. The amount of "license tax" exacted is immaterial. *Brown* v. *Maryland*, 12 Wheat. 419; *Mayor, &c. of Rome* v. *Lumpkin et al.*, 5 Ga. 447; *Adams* v. *Mayor of Albany*, 29 id. 56; *Chastain* v. *Town Council of Calhoun*, 29 id. 333; *Sanders* v. *Town Commissioners of Butler*, 30 id. 679; *Mayor, &c. of Savannah* v. *Charlton*, 36 id. 460; *Mayor, &c. of New York* v. *Nichols*, 4 Hill, 209; *Wood* v. *City of Brooklyn*, 14 Barb. 425; *Stein* v. *Mayor, &c. of Mobile*, 49 Ala. 362; *Mayor, &c. of New York* v. *Second Avenue R. R. Co.*, 32 N. Y. 261; *Leonard* v. *City of Canton*, 35 Miss. 189; *Martin* v. *O'Brien*, 34 id. 21; *Boyd and Jackson* v. *The State*, 46 Ala. 329; *Philadelphia Association* v. *Wood*, 39 Penn. St. 73; *Prince* v. *City of St. Paul*, 19 Minn. 267.

Mr. *William Brown*, contra.

MR. JUSTICE SWAYNE delivered the opinion of the court.

Under an act of the legislature of Georgia, of the 19th of March, 1869, the insurance company procured the requisite authority to transact, by itself or agents, the business of insurance for one year, from the 1st of January, 1874, and, at the option of the company, for sixty days longer.

The company thereupon established an office and agency in the city of Augusta, and thereafter transacted business at that place. A general law of the State imposed a tax of one per cent upon the gross amount of premiums received. An ordinance of the city imposed a tax of one and a quarter per cent upon such receipts. These taxes were paid by the company without objection. On the 5th of January, 1874, the city council passed an ordinance which imposed, further, a license tax of $250 "on each and every fire, marine, or accidental insurance company located, having an office, or doing business within the city of Augusta." The bill was filed to enjoin the collection of this tax. The Superior Court of Richmond County sustained the validity of the tax, and dismissed the bill. The Supreme Court of the State affirmed the decree. The complainant thereupon sued out a writ of error, and removed the case to this court.

In the argument here, it was insisted by the defendant in error that this court has no jurisdiction of the case. We will first consider this objection. The bill alleges that the ordinance imposing the tax in question is void for many reasons, and, among them, that it is in conflict with the contract clause of the Constitution of the United States.

Where a judgment or decree is brought to this court by a writ of error to a State court for review, the case, to warrant the exercise of jurisdiction on our part, must come within one of three categories: —

1. There must have been drawn in question the validity of a treaty or statute of, or authority exercised under, the United States; and the decision must have been against the claim which either was relied upon to maintain.

2. Or there must have been drawn in question a statute of, or authority exercised under, a State, upon the ground of repugnance to the Constitution, or a law or treaty of, the United States; and the decision must have been in favor of the validity of the State law or authority in question.

3. Or a right must have been claimed under the Constitution, or a treaty, or law of, or by virtue of a commission held or authority exercised under, the United States; and the decision must have been against the right so claimed. Rev. Stat. 132, sect. 709; *Sevier* v. *Haskell*, 14 Wall. 15; *Weston* v. *City Council of Charleston*, 2 Pet. 449; *McGwyre* v. *The Commonwealth*, 3 Wall. 385.

Here there was drawn in question the authority exercised by the city council under the State in passing the ordinance imposing the tax complained of. The question raised was as to its repugnancy to the Constitution of the United States; and the decision was in favor of the validity of the authority so exercised. A right was also claimed under the Constitution of the United States. The decision was adverse to the claim. The case is, therefore, within two of the categories we have stated. The jurisdictional objection cannot be maintained.

This brings us to the consideration of the case upon its merits. Whether the claims which give us jurisdiction are well founded, is the question to be considered.

The national Constitution (art. 1, sect. 10, clause 1) declares

that " no State shall pass any law impairing the obligation of contracts."

The act of 1869, before mentioned, forbids any company to do the business of insurance in the State, without first obtaining a certificate from the comptroller-general of the State. Before obtaining such certificate, every company is required to furnish a sworn statement, setting forth certain specified particulars. Upon being satisfied of the truth of the statement, he is required to issue the certificate. He is entitled to a fee of seven dollars and a half for examining and filing each statement, and a fee of two dollars and a half for each certificate. The fifth section declares that whatever deposits, taxes, penalties, certificates, or license-fees are exacted from Georgia companies in any other State, shall be exacted from the companies of such State in Georgia. It does not appear by the record that any Georgia insurance company was doing business in New York in the year 1874. This section, therefore, does not affect the case in hand. The act contains no other allusion to the subject of taxation. It does not, therefore, circumscribe in any degree the taxing power of the State, or of any municipality within the State clothed with such authority. It left both, in this respect, standing just where they would have stood if this act had not been passed. It contained no stipulation, express or implied, that either should be thereby in any wise limited or restrained.

If it were competent for the State to impose the tax of one per cent upon the gross amount of premiums received, would it not have been equally so for the State to impose a further tax, the same with that in question, and in the same way? And if it were competent for the city council to impose the tax of one and a quarter per cent upon the same receipts, why might it not impose the further burden here in question? If the State could impose the further tax, why not the municipality? Is there any sensible ground of contract prohibition upon which the claim of exemption from either can be placed? This question must necessarily be answered in the negative. We find no semblance of a contract that additional taxes should not be imposed.

In *The License Cases*, 5 Wall. 462, the nature of the tax exaction here in controversy was carefully considered by this court.

There the revenue laws of the United States required payment in advance to be made for permission to carry on the business of selling liquor, and of selling lottery-tickets. It was provided that no license so granted, or special tax so laid, should be construed to authorize any business within a State forbidden by the laws of such State, or so as to prevent the taxation by the State of the same business.

This court held that the payment required was a special tax, levied in the manner prescribed; that the penalty provided was a mode of enforcing its payment; and that the license, when issued, was only a receipt for the tax. It was held further, that, as regards the reservation of power in favor of the States, the result would have been the same if the acts of Congress had been silent upon the subject. This was necessarily so, because the objects taxed belonged to the internal commerce of the States, and were within their police power, and the right of Congress and the States to tax was concurrent. Congress could, therefore, no more restrict the power of a State than the State could restrict that of Congress.

What is said there as to license taxes is applicable to the case before us. There is no difference in principle between such a tax and those which have been paid by the plaintiff in error to the defendant in error, and to the State, without objection.

In the ordinance in question the tax is designated " a license tax," but its payment is not made a condition precedent to the right to do business. No special penalty is prescribed for its non-payment, and no second license is required to be taken out. Had the ordinance been otherwise in these particulars, we have seen, viewing the subject in the light of the *License Tax Cases*, that the result would have been the same.

The case in all its aspects was ably and elaborately examined by the Supreme Court of the State. Their conclusion upon the " Federal question " we have considered is the same with ours. There being no other such question raised in the record, our duty is thus terminated. We have no authority to look further into the case.                          *Judgment affirmed.*