## FARKAS, executor, et al. v. SMITH, ordinary, et al.

1. The act of the General Assembly, approved August 19, 1913 (Acts 1913, p. 91), known as the inheritance-tax law of this State, imposes a tax on the transmission of property by either of the methods stated in the act, and not upon the property itself; and the tax may be assessed against the owner of an estate for the privilege of making a disposition of his property which shall take effect after his death.
2. The inheritance-tax act above mentioned is not unconstitutional and invalid for the alleged reasons:  (1) that it contains matter different from that expressed in its title;  (2) that it imposes taxes which are not uniform upon the same class of subjects;  (3) that it imposes a tax not based upon an ad valorem estimate upon all property subject to be taxed within the territorial limits of the State;  (4) that the tax is levied without reference to that provision of the constitution of Georgia which limits the levy of taxes on property for one year to not exceeding five mills on each dollar of the value of the property tax-

able; (5) that the act is so uncertain as to be incapable of legal enforcement; (6) that it contravenes that provision of the Federal constitution which provides that no State shall deprive any person of life, liberty, or property without due process of law; (7) that it violates that provision of the Federal constitution which provides that no State shall deny to any person within its jurisdiction the equal protection of the laws.

3. Where a devise is made to a trustee who is nominated also as executor of the will, the process of devolution accomplished in the course of administration by the executor in transferring to himself as trustee the legal title to the property devised is the transfer which, under the inheritance-tax law of this State, is the subject of levy of a tax; and this is true though in the devise creating the trust there are provisions which postpone to an uncertain and indefinite time the enjoyment by some possible beneficiary of an estate in the property covered by the trust, to which he may become ultimately entitled upon its final execution.

4. In such a case the tax leviable is not upon the property covered by the trust, but upon the act of devolution by which the legal title passes from the executor to the trustee; and where by the will the legal title passes as a whole and but once, and lodges at once in the trustee, no further inheritance tax is chargeable against the estate of the testator on account of any person who may be ultimately interested in the trust property, irrespective of the nature or extent of the interest which he may acquire from the trustee upon final execution of the trust.

5. The devise being to a named trustee, the act of devolution is complete when the legal title to the property reaches him; and since under the act there can be no further inheritance tax levied against the estate of the testator, the act is not uncertain or indefinite either as to the person against whom the tax is to be levied or as to the time when it is to be paid.

6. The property covered by the devise in the present case passed to the trustee in solido, and the fact that some of the cestuis que trustent are entitled to benefits in præsenti, while the enjoyment of the interest of others is postponed to some indefinite time in futuro, does not bring the trust itself within the provision of section 4 of the act, so as to require a separate assessment of the several interests, or an apportionment of taxes among them as provided in cases of separate estates.

No. 144.   January 15, 1918.

Petition for injunction.   Before Judge Cox.   Dougherty superior court.   December 30, 1916.

Sam Farkas died testate on September 13, 1915, leaving an estate consisting of realty and personalty of the estimated total value of $365,235.40.   He left surviving eight children.   To five of these he bequeathed his entire estate, as follows: "I give, bequeath, and devise to Freddie Farkas Harby, Mack Farkas, Gertrude Farkas Meyer, Leonard Farkas, and Paul Farkas, in trust

for the use and benefit herein declared, all my property, personal, real, mixed, choses in action of any nature whatsoever, and all debts and obligations that are or may be.due me from any source whatsoever, to hold same for the benefit of my heirs hereinafter designated as Freddie Farkas Harby, Mack Farkas, Gertrude Farkas Meyer, Sigo Farkas, Leonard Farkas, Paul Farkas, Edwin Farkas, and George Farkas, for their lives, with the remainders over ,as hereinafter declared, and on the terms and conditions stipulated in this instrument." Items three, four, and five of the will are as follows: (3) "Said trustees above named are to have entire control over the management and use of said property, to collect all debts, rents, and to exercise any control consistent with .the estate devised by this instrument. I expressly confer upon the above trustees full· authority and power to sell any part of my estate at public or private sale, with or without notice or adver-, tisement, as they may deem best, and without any order of the court, and to make good and sufficient conveyance in fee simple to the purchaser, and to reinvest the proceeds of the sale as they may think proper and wise for the benefit of the trust, and upon the uses herein declared. I further hereby confer upon the trustees above named the authority and power to borrow money for the use of said estate in any instance that they may think it necessary and proper, and to secure the same by lien, mortgage, security deed of trust, or other forms of security, to or upon any part of my estate. The authority above conferred is limited and restricted to the trustees named in this instrument, or those appointed by virtue of the authority conferred by this instrument." (4) "My trustees are authorized to continue any business that I may be engaged in at the time of my death, or they may embark or engage in any kind of business, trade, or enterprise that they may think proper and best for the estate. The said trustees may discontinue, or cease conducting, or sell any of the businesses or enterprises that I may be engaged in at the time of my death, or any businesses, trades, or enterprises that they may have undertaken after my death. It is my desire and wish that my horse and mule business, and other things sold in connection therewith, when the trustees shall see fit to sell the same, shall not be sold to any person, firm, or corporation, except my sons or any number of them. And my trustees are hereby limited and restricted in their power

of disposition of said business to one, all, or any number of my sons, Mack, Leonard, and Paul, named as trustees in this will, shall not be prohibited from becoming purchaser by reason of their trusteeship. I intend by this instrument to confer the right to purchase upon said trustees, notwithstanding any law to the contrary, which may be avoided by specific request or authority." (5) "The trustees above named shall pay all necessary and proper expenses for the preservation, upkeep, improvement, and management of the estate, out of the income of said estate; and if said income shall be insufficient, then the trustees may exercise their right to borrow on the corpus of said estate." The testator then provides for the disposition of the income arising from his estate, and against the possibility of death of any of his children without issue. Items 16 and 17 are as follows: (16) "The trust created by this instrument shall continue during the life of Freddie Farkas Harby, Mack Farkas, Gertrude Farkas Meyer, Sigo Farkas, Leonard Farkas, Paul Farkas, Edwin Farkas, and George Farkas, and until the youngest child of the above-named parties shall have attained the age of twenty-one (21) years." (17) "Upon attainment of majority of my youngest grandchild, that is, the youngest child of the above-named parties (Freddie Farkas Harby, Mack Farkas, Gertrude Farkas Meyer, Sigo Farkas, Leonard Farkas, Paul Farkas, Edwin Farkas, and George Farkas), the trust herein created shall terminate, and the estate shall be divided among the direct descendants of the testator, per stirpes, by the then existing trustees, according to value. Assessments are to be made by three (3) disinterested parties, who are to be appointed by the presiding judge of the superior court of Dougherty County, at the time of distribution, and upon the petition of the trustees, after proper notice has been given to all parties interested." Item 19 names as executors the same persons designated as devisees in trust by item two, expressly conferring on them power to administer the estate, excusing them from giving bond, from making returns to the ordinary, and from having any inventory or appraisement.

In pursuance of the provisions of the inheritance-tax act (Acts 1913, p. 91), an appraisement of the estate was made, and a tax amounting to $3,222.35 was levied. To prevent its enforcement against the estate, the executors and trustees, as well as the legatees, named in the will filed a petition for injunction against the officers

charged by law with the collection of such tax. The State of Georgia as a party at interest appeared by counsel and filed a general demurrer. It also filed an answer to the petition, admitting the facts as therein stated, but denying the correctness of the conclusion of law drawn from those facts by counsel for the estate. The judge decided adversely to the petitioners on the issue of law thus made, and denied the injunction. The plaintiffs excepted.

*Leonard Farkas* and *Pope & Bennet,* for plaintiffs.

*Clifford Walker, attorney-general, John C. Hart,* and *M. C. Bennet,* for defendants.

ATKINSON, J. 1. It is mainly contended that the act in question, especially in view of section 10, is a provision for taxing property within the meaning of that part of the constitution limiting the power of levying an ad valorem tax, and not merely an excise on the transfer of property. Whether a property tax is imposed is a material question which calls for a construction of the act. It is to be borne in mind that there is a distinction between taxing property and taxing the transmission of title to property upon the death of an owner; they constitute separate taxable subjects, the former being a tax on property, and the latter a tax or license on a privilege arising under statute. A tax may be constitutionally imposed on both. This is ruled in the case of United States *v.* Perkins, 163 U. S. 625 (16 Sup. Ct. 1073, 41 L. ed. 287), where in the course of the opinion it is said by Mr. Justice Brown: "Though the general consent of the most enlightened nations has from the earliest historical period recognized a natural right in children to inherit the property of their parents, we know of no legal principle to prevent the legislature from taking away or limiting the right of testamentary disposition or imposing such conditions upon its exercise as it may deem conducive to public good. In this view, the so-called inheritance tax of the State of New York is in reality a limitation upon the power of a testator to bequeath his property to whom he pleases; a declaration that, in the exercise of that power, he shall contribute a certain percentage to the public use. In other words, that the right to dispose of his property by will shall remain, but subject to a condition that the State has a right to impose. Certainly, if it be true that the right of testamentary disposition is purely statutory, the State has a right to require a contribution to the public treasury before the

bequest shall take effect. Thus the tax is not upon the property, in the ordinary sense of the term, but upon the right to dispose of it, and it is not until it has yielded its contribution to the State that it becomes the property of the legatee. This was the view taken of a similar tax by the Court of Appeals of Maryland in State *v.* Dalrymple, 70 Md. 294, 299, 3 L. R. A. 372, 17 Atl. 82, in which the court observed: 'Possessing, then, the plenary power indicated, it necessarily follows that the State in allowing property . . to be disposed of by will, and in designating who shall take such property when there is no will, may prescribe such conditions, not in conflict with or forbidden by the organic law, as the legislature may deem expedient. These conditions, subject to the limitation named, are consequently wholly within the discretion of the General Assembly. The act we are now considering plainly intended to require that a person taking the benefit of a civil right secured to him under our laws should pay a certain premium for its enjoyment. In other words, one of the conditions upon which strangers and collateral kindred may acquire a decedent's property, which is subject to the dominion of our laws, is that there shall be paid out of such property a tax of two and one half per cent into the treasury of the State. This, therefore, is not a tax upon the property itself, but is merely the price exacted by the State for the privilege accorded in permitting property so situated to be transferred by will or by descent or distribution.' "

In this connection it may be helpful to note also the language of Mr. Justice Lamar in Keeney *v.* New York, 222 U. S. 525, 534 (32 Sup. Ct. 105, 56 L. ed. 299): "Wherever the amount of a tax is, as here, to be measured by the value of property, it has been earnestly argued that it was to tax the property itself, and that to ignore that feature is to put the name above the fact. But when the State decides to impose such a tax, then the amount must be determined by some standard. To require the same amount to be paid on all transfers is not so fair as to impose the burden in proportion to the value of the property. An excise on transfers therefore does not lose that character because the amount to be paid is determined by the values conveyed. In view of the decision in Magoun *v.* Illinois Trust Bank, 170 U. S. 283 [18 Sup. Ct. 594, 42 L. ed. 1037], and other cases already cited, it is unnecessary to review the arguments pro and con, and again point out the

distinction which has been made and sustained between excises and ad valorem taxes."

Bearing in mind the distinction between a tax on property and an excise on the privilege of a transfer of property to take effect at the death of an owner, we may with clearer foresight proceed to construe the act involved in this case. The first rule for the interpretation of a statute is to seek diligently the intention of the legislature as manifested in its terms; and in arriving at this intention one of the most important matters to consider is the context of the act itself; for if words or phrases may seem ambiguous or devoid of meaning when separated from the context, and when read in connection with the context are clear and easily understood, there is no ambiguity in the act itself. The caption of the act now under consideration expressly forecasts an intent "to create, provide for, and require the payment of taxes whenever property passes by the laws of inheritance or succession, by will, or by deed, grant, or gift intended to take effect in possession or enjoyment after the death of the grantor or donor . . " Section one declares, that "all property within the jurisdiction of this State, real and personal, and every estate and interest therein, whether belonging to the inhabitants of this State or not, which shall pass on the death of a decedent by will or by the laws regulating descents and distribution, or by deed, grant, or gift, except in cases of a bona fide purchase for a full consideration, made, or intended to take effect in possession or enjoyment, after the death of the grantor or donor, to any person or persons, bodies politic or corporate, in trust or otherwise, shall be subject to taxes, and shall pay the following tax to this State:   (1) Upon a transfer taxable under this act of property or any beneficial interest therein, of an amount in excess of the value of five thousand ($5000) dollars, to any father, mother, husband, wife, child, brother, sister, wife or widow of a son, or any child or children adopted as such, in conformity with the laws of this State, of the decedent, grantor, donor or vendor, or to any lineal descendant of such decedent, grantor, donor or vendor, born in lawful wedlock, the tax shall be at the rate of 1 per cent. on any amount in excess of five thousand ($5,000) dollars.   (2) Upon a transfer taxable under this act, of property or any beneficial interest therein, of any amount to any person or corporation, or association other than those enumerated in

paragraph one of this section, the tax shall be at the rate of 5 per cent." Section 3 declares, "that the taxes imposed by this act shall be and remain a lien upon the property subject to said tax from the death of the decedent, and that all taxes imposed by this act, unless otherwise herein provided for, shall be due and payable at the death of the decedent." Section 4 declares, that "if the property passing as aforesaid shall be divided into two or more estates, as an estate for years or for life and a remainder, then said tax shall be levied on every estate and interest separately, according to the value of the same at the death of the decedent; that the value of the remainder in said property so limited shall be ascertained by deducting the value of the life-estate, term of years, or period of limitation from the fair market value of the property so limited, and the tax on the several estate or estates, remainder or remainders, or interest shall be immediately due and payable to the tax-collector of the proper county, and said tax shall accrue as provided in section three of this act; that the value of estates for years, estates for life, remainders, and annuities shall be fixed and determined upon mortality tables using the interest rate or income rate of six per cent." Section 10 declares: "That when property subject to this tax is transferred or limited in trust or otherwise, and the rights, interest, or estates of the transferees or beneficiaries are dependent upon contingencies or conditions whereby each may be wholly or in part created, defeated, extended, or abridged, the tax so imposed on such property shall be due and payable forthwith by the executor or trustee out of the property transferred; that where an estate for life or for years can be divested by the act or omission of the legatee or devisee, it shall be taxed as if there were no possibility of such divesting."

In passing this act, the law being that the right of transfer of property to take effect at death is separate from the property itself, and (as will appear in the second division of the opinion) that both may be constitutionally taxed, the legislature had in mind the difference here pointed out and their power to tax as indicated. For similar reasons they knew that all taxation upon property subject to be taxed in this State should be uniform and ad valorem, and that no ad valorem tax could be levied in excess of the constitutional limit of five mills. They knew that provision existed for levying ad valorem taxes on property up to the limit of five mills,

and that no provision existed for levying any tax upon the right of transmission of property at death. The legislature will not be presumed to intend to enact an unconstitutional or an unnecessary law. Under these circumstances what other object could the legislature have had than to provide for a tax upon a transfer taking effect at death? If they had intended to do the unnecessary thing of taxing property, why should the act have referred at all to the other taxable subject of transfer? If they had intended to tax the property itself, why needlessly declare that the tax should be a lien on the property? The provisions above quoted from the caption and body of the act make transfer the prime object of the act; for without transfer there would be no tax. Subsections 1 and 2 of section 1 use the language, "upon a transfer taxable under this act." The tax is made to attach immediately at the death of the owner, and the right of the State being then fixed, a lien as provided in section 3 arises in favor of the State against the property itself; but this does not change the subject of the tax. The creation of a lien or mortgage does not impair the validity or change the character of the debt which is thereby secured. The act in many instances speaks of tax on property and on interests in property and the like; but all such expressions, considered in connection with the context, are to be construed as referring to the property in its relation as security, or the means of paying the tax, rather than as characterizing the subject of the tax. Considering the act in its entirety, the provisions for levying the tax should be construed as referring to the succession. When the act was for consideration on a former occasion, a similar construction was placed upon it. *Martin* v. *Pollock,* 144 *Ga.* 605 (87 S. E. 793). The ruling here made might well have rested on the decision made in that case, but the reasons were not elaborately discussed in the opinion, and we have construed the act as of first impression.

2. It is contended that in so far as the act may be construed as imposing a tax upon transmission of property or any estate or interest therein less than the whole estate or interest, and in so far as it imposes taxes only in cases where the value of the property is in excess of $5,000, the body of the act contains matter different from what is expressed in the title, and therefore that it is violative of par. 8 of sec. 7 of art. 3 of the constitution of Georgia (Civil Code § 6437), which declares: "No law or ordinance shall pass

which refers to more than one subject-matter, or contains matter different from what is expressed in the title thereof." A part of the caption and so much of the body of the act as is' involved in this ground of attack upon the constitutionality of the act are set forth in the preceding division of this opinion, and need not be restated. The caption indicates the object and general scope of the law. The matters which it is contended were improperly included in the body of the act were a part of the general legislative scheme as indicated by the caption, and come within its comprehension. This being so, it complies with the constitutional requirement, and there is no merit in this ground of attack.

Other contentions are, that the act is violative of: (a) Art. 7, sec. 2, par. 1, of the constitution of Georgia (Civil Code, § 6553), because under a proper construction it imposes a tax upon property as distinguished from transmission of title, and is not "uniform upon the same class of subjects," and not "ad valorem upon all property subject to be taxed within the territorial limits of the authority levying the tax." (b) Art. 7, sec. 1, par. 2, of the constitution of Georgia (Civil Code, § 6552), because it is a levy of taxes upon property for one year, exceeding five mills on each dollar of the value of property taxable, and is not levied to provide for repelling 'invasion, suppressing insurrection, or defending the State in time of war. (c) Amendment 5 of the constitution of the United States (Civil Code, § 6688), providing that no person shall be deprived of life, liberty, or property without due process of law, because under a proper construction the act is a tax on property, and neither this act nor any general law of the State provides for legal notice to the parties subject to the tax or for a hearing on the value of the property before the ordinary or assessors. (d) Amendment 14 of the constitution of the United States (Civil Code, § 6700), because in so far as the act requires payment of the tax "out of the property transferred," it constitutes an unjust discrimination against those taking life-estates and all other estates less than fee simple. It will be observed that these several grounds of attack rest upon the contention that the tax is upon the property. The ruling made in the first division of this opinion, that the tax is upon the transmission and not upon the property, meets all of the objections, except that relating to due process of law, with which we will presently deal. See Keeney v. New York, 222

U. S. 525 (32 Sup. Ct. 105, 56 L. ed. 299); Magoun *v.* Illinois Trust Bank, 170 U. S. 283 (18 Sup. Ct. 594; 42 L. ed. 1037); Plummer *v.* Coler, 178 U. S. 115 (20 Sup. Ct. 829, 44 L. ed.; 998); Murdock *v.* Ward, 178 U. S. 146 (20 Sup. Ct. 775, 44 L. ed. 1009); Knowlton *v.* Moore, 178 U. S. 41 (20 Sup. Ct. 747, 44 L. ed. 969). In the decision last cited, after referring to other cases, it was said by Mr. Justice White in the course of the opinion: "It is not necessary to review these cases or state at length the reasoning by which they are supported. They are based on two principles: 1. An inheritance tax is not one on property, but one on the succession. 2. The right to take property by devise or descent is a creature of the law, and not a natural right; a privilege, and therefore the authority which confers it may impose conditions upon it. From these principles it is deduced that the States may tax the privilege, discriminate between relatives, and between these and strangers, and grant exemptions; and are not precluded from this power by the provisions of the respective State constitutions requiring uniformity and equality of taxation." In ascertaining the amount of the excise on the succession, the act required resort to the value of the property, and made provision for the assessment. The complaint that the act violated the due-process clause of the Federal constitution was on the ground that it did not provide for lawful notice to persons at interest, and did not afford them a hearing on the question of valuation. The assessment of the value of the property is in the nature of a proceeding in rem, and service of notice by publication will suffice as notice under the due-process clause of the constitution. Bellingham Bay etc. Railroad Co. *v.* New Whatcom, 172 U. S. 314 (19 Sup. Ct. 205, 43 L. ed. 460). Taylor on Due Process of Law, § 159, pp. 365-366. Section 11 of the act provides for appraisement of values of property and notice by publication to all persons at interest, and, where properly construed, affords them a hearing upon the question of value. *Martin v. Pollock,* supra, where it is held that the act is not violative of the due-process clause of the Federal constitution. More need not be said to show that the several grounds of attack upon the constitutionality of the act are without merit.

3-6. Other contentions are, that, conceding the constitutionality of the act, the provisions of sections 4 and 10, apportioning the tax in instances where different estates are created in the same

33

property, are unenforceable when applied to the will of Sam Farkas, on account of the peculiar character of the several estates created by the will. Headnotes three to six, inclusive, cover these questions, and only slight, if any elaboration, is necessary. It is to be borne in mind that the tax is upon the transfer. A transfer might have resulted by operation of law as by inheritance in cases of intestacy; in which event there could have been no contingent or indefinite estates. The transfer under consideration, however, was not of that character. On the contrary it was the case of a will. The will might have devised the property directly to those whom the testator intended should enjoy the bounty; or, some of those intended to enjoy the estate being minors and others being indeterminate, he could, under section 1 of the act, have made the bequest directly to a trustee, and let the usees enjoy the property thereafter. In this instance the testator resorted to that expediency. The statute contemplates cases of this kind, and by section 1 it provides for taxing transfers made to a trustee. In such a case, if the trust comprehends the fee, legal title to the property passes entirely out of the estate of the testator and into the trustee. This accomplishes a transfer which is taxable within the meaning of the act; for there can be but one transmission by the testator, and when it is to a trustee who takes the legal title to the fee, the trustee becomes the other party to the succession, and the taxable transmission becomes complete. In such instance the taxable transfer to the trustee is not "divided into two or more estates" within the meaning of section 4 of the act. The broad language of the trust created by the will of Sam Farkas shows that the trustee took. for the benefit of all the legatees under the will, thus causing the trust to extend to the fee. *McLain* v. *Rabon,* 142 *Ga.* 163 (82 S. E. 544). This being true, there were no executory interests in remainder or otherwise attaching to the transfer (the subject of taxation), within the meaning of the act, and therefore there was no occasion for a separate assessment upon the property left by the testator. The trustees receiving the property in solido by the transfer to them, the entire tax would be payable out of the property in the first instance as provided in section 10 of the act. This case affords an example for applying sections one, four, and ten of the act, and serves to illustrate the consistency between those provisions. The transmission of title by operation of law

or otherwise, from the trustees to the cestuis que trust ultimately entitled to enjoyment of the property, will not be taxable, because the statute imposes a tax on but one transfer, namely, that from the testator to the trustee, which went into effect at the death of the testator.   In view of the complicated character of this will, it would be difficult to apportion the proper amounts of the tax against the separate interests of the various cestuis que trust in the property, and much inconvenience and delay might be encountered by the State in collecting the tax.   Broad powers were conferred upon the trustees over the property of the testator in the matters of sale and disposition of the property and conduct of the business left by the testator.   However, any disposition of the property without payment of the tax would be subject to the lien of the tax, and to that extent would be to the disadvantage and inconvenience of the trustees.   On the other hand, if by business misadventure or otherwise, the property left by the testator should be lost or in any manner wasted pending delay in paying the tax, it would operate to the inconvenience and injury of the State.   Such possibilities, no doubt, were taken into account when the legislature provided for the tax in cases of transfers to trustees.   The view which we take of this act, as applied to the will under consideration, brings us to the conclusion that the tax was properly levied on the property in the hands of the trustee in solido; and we see no cause for reversing the judgment refusing the injunction.

*Judgment affirmed.   All the Justices concur.*