**TEXAS CO. v. BROWN, Commissioner of Agriculture of Georgia, et al.**

(District Court, N. D. Georgia. June 28, 1920.)

No. 143.

1. **Commerce ☞51, 72—Oil inspection law, with fees largely exceeding cost, void as to interstate commerce.**
   Park's Ann. Pol. Code Ga. § 1800 et seq., providing for inspection of petroleum oils, and fixing the fees therefor, which aggregate many times the cost of the inspection service, *held* a revenue statute, and unconstitutional, as imposing a tax on interstate commerce as applied to oils brought into the state for sale in the original containers and so sold, but valid as to oil imported for indefinite storage or for sale after breaking the original package.

2. **Inspection ☞6—Foreign corporation liable for cost of inspection.**
   Payment by a foreign corporation of a general tax for doing business in the state does not exempt it from liability for the cost of inspection of an article in which it deals.

3. **Inspection ☞2—Taxation ☞40(2)—Oil inspection law valid under Georgia Constitution.**
   A statute exacting graduated fees for inspection of oils *held* not a tax on property, nor in violation of Const. Ga. art. 7, § 2, providing that "all taxation shall be uniform on the same class of subjects, and ad valorem on all property subject to be taxed."

   Walker, Circuit Judge, dissenting in part.

In Equity. Suit by the Texas Company against J. J. Brown, Commissioner of Agriculture of the State of Georgia, and others. Decree for complainant.

James L. Nesbitt, of New York City, and Rosser, Slaton, Phillips & Hopkins, of Atlanta, Ga., for plaintiff.

Clifford Walker, Atty. Gen., and Brewster, Howell & Heyman and Mark Bolding, all of Atlanta, Ga., for defendants.

Before WALKER, Circuit Judge, and BEVERLY D. EVANS and SIBLEY, District Judges.

SIBLEY, District Judge (with whom concurs BEVERLY D. EVANS, District Judge). By a law of Georgia, passed in 1890 (Park's Pol. Code, § 1800 and following), kerosene and petroleum and products thereof were required to be inspected under specified standards, for which fees were fixed of one-half cent per gallon for lots exceeding 400 gallons, and a larger fee for smaller lots, the fees to be paid monthly into the state treasury, less certain amounts, not to exceed $100 per month, which the inspectors might retain as their compensation. In 1912 this act was extended expressly to gasoline, benzine, and naphtha. Park's Code, § 1809(a). In 1913 (Park's Code, § 1809[e]) the provisions of the last-named act were made applicable, not only to gasoline, benzine, and naphtha sold or offered for sale in Georgia, but also to those sold elsewhere and brought into the state of Georgia for consumption or use by the importer. No question upon this last-named act arises in this case, as the products involved are not

imported for consumption by the importer. By a criminal enactment (Park's Penal Code, § 642) it is provided:

"If any person shall sell, or keep for sale or in storage, any crude or refined petroleum, naphtha," gasoline, benzine or kerosene "without having the same inspected and approved by an authorized inspector, he shall be guilty of a misdemeanor."

The petitioner, a corporation of another state, is an importer of kerosene and gasoline, made or bought by it in other states and brought by it in interstate commerce for sale in Georgia, in tank cars of about 8,000 gallons each, which sometimes are sold in bulk and sometimes broken for retail, or their contents stored. It is shown, and not denied, that for years past the receipts by the state from inspection fees have been many times the salaries of inspectors and other costs of inspection, and thereupon it is claimed that the law operates as an unconstitutional burden upon interstate commerce, and that it is also in conflict with the tax provisions of the state Constitution, and an injunction is prayed against its enforcement as against petitioner's business.

[1] 1. The inspection is obviously an exercise, primarily, of the state's police power. Petroleum products may constitutionally be inspected while still in interstate commerce, even at the state line, and an accompanying fee, which does not obviously and largely exceed the cost of inspection, is a part of the inspection and equally allowable under the police power. Pure Oil Co. v. Minnesota, 248 U. S. 158, 39 Sup. Ct. 35, 63 L. Ed. 180. A so-called inspection fee, however, which obviously and largely exceeds the cost of inspection, is not so justified and cannot be imposed by a state upon interstate commerce. Standard Oil Co. v. Graves, 249 U. S. 389, 39 Sup. Ct. 320, 63 L. Ed. 662; Foote v. Maryland, 232 U. S. 494, 34 Sup. Ct. 377, 58 L. Ed. 698. Such a fee, though imposed professedly as an inspection fee, and under the police power, is really a tax, and must be justified as an exercise of the taxing power, if at all. Accordingly the licensing of occupations, which is properly an exercise of the police power, may be accompanied by the exaction of fees for revenue. Notwithstanding the police guise, these are taxes, and stand or fall as such. License Tax Cases, 5 Wall. 462, 18 L. Ed. 497; Royall v. Virginia, 116 U. S. 572, 6 Sup. Ct. 510, 29 L. Ed. 735. Such exactions may be referable to both the police and the taxing powers at the same time, and are valid if sustained by either or both powers.

"It is not a valid objection to the ordinance that it partakes of both the character of a regulation and also that of an excise or privilege tax. The business is more easily subjected to the operation of the power to regulate, where a license is imposed for following the same, while the revenue obtained on account of the license is none the less legal because the ordinance which authorized it fulfils the two functions—one a regulating and the other a revenue function. So long as the state law authorized both regulation and taxation. it is enough, and the enforcement of the ordinance violates no provision of the federal Constitution." Gundling v. Chicago, 177 U. S. 189, 20 Sup. Ct. 633, 44 L. Ed. 725.

Disregarding names, therefore, and going to the substance, the exaction sub judice, though called a fee, and imposed in connection with

an inspection, is found, not only to greatly exceed the cost of inspection, but to have been intended to raise revenue. The charge for inspecting a tank car of petitioner's oil is $40, but under the law the inspector can keep but $10 for his services and, when his retentions reach $100 per month, the whole of it is paid into the state treasury. Actual trial of the law has showed, for many years, an income to the state many times the cost of executing the inspection law. The fees were not reduced by the Legislature, but the law was amended and extended, and the revenue increased, and has been specifically appropriated from year to year to the support of certain public institutions. Both in purpose and in effect, the law is a revenue law.

Regarded as such, this case is ruled as to the federal question by that of Askren v. Continental Oil Co., 253 U. S. ——, decided by the Supreme Court April 19, 1920, 40 Sup. Ct. 355, 64 L. Ed. ——. In that case inspection is not prominent, but a license tax was imposed on dealers, and in addition an excise tax of 2 cents per gallon on oil sold or used. But the inspection fee of the Washington statute dealt with in the Graves Case, supra, which is quite similar to the Georgia law, was referred to as a tax because in excess of the cost of inspection; the court saying:

"As to gasoline brought into the state in the tank cars, or in the original packages, and so sold, we are unable to discover any difference in plan of importation and sale between the instant case and that before us in Standard Oil Company v. Graves, 249 U. S. 389, 39 Sup. Ct. 320, 63 L. Ed. 662, in which we held that a tax, which was in effect a privilege tax, as is the one under consideration, providing for a levy of fees in excess of the cost of inspection, amounted to a direct burden on interstate commerce. In that case we reaffirmed, what had often been adjudicated heretofore in this court, that the direct and necessary effect of such legislation was to impose a burden upon interstate commerce; that under the federal Constitution the importer of such products from another state into his own state for sale in the original packages had a right to sell the same in such packages without being taxed for the privilege by taxation of the sort here involved. Upon this branch of the case we deem it only necessary to refer to that case, and the cases therein cited, as establishing the proposition that the license tax upon the sale of gasoline brought into the state in tank cars, or original packages, and thus sold, is beyond the taxing power of the state."

We accordingly hold the Georgia statute unenforceable as against the importations by petitioner intended to be sold in the original packages and so sold.

In the Askren Case, as to the portion of the plaintiff's business that consisted in selling gasoline at retail, though brought into the state of New Mexico from another state, it was said:

"So long as there is no discrimination against the products of another state, and none is shown from the mere fact that the gasoline is produced in another state, the gasoline thus stored and dealt in is not beyond the taxing power of the state. Wagner v. City of Covington, decided Dec. 8, 1919. Sales of the class last mentioned would be a subject of taxation within the legitimate power of the state."

We accordingly hold that the importations of petitioner which are indefinitely stored within the state, or are resold there after breaking the original packages, are subject, not only to inspection, but to the tax imposed, so soon as the interstate transportation of them is ended.

The fact that such oils must inevitably meet the tax before they can be used otherwise than for sale in the original packages is not material. This is true of all general taxation. If there is no discrimination because of their being imported, they pass under the taxing power of the state, as under its protection, so soon as they pass out of interstate commerce by a sale or breaking of the original packages by the importer, or by indefinite storage. General Oil Co. v. Crain, 209 U. S. 211, 28 Sup. Ct. 475, 52 L. Ed. 754; American Steel Wire Co. v. Speed, .192 U. S. 500, 24 Sup. Ct. 365, 48 L. Ed. 538; Banker v. Pennsylvania, 222 U. S. 210, 32 Sup. Ct. 38, 56 L. Ed. 168; Bacon v. Illinois, 227 U. S. 504, 33 Sup. Ct. 299, 57 L. Ed. 615, 23 L. Ed. 825.

[2] The pleaded payment of the general corporation tax for doing business in the state is not a relief from taxes such as these. Home Insurance Co. v. Augusta, 93 U. S. 116, 23 L. Ed. 825. The act imposing the corporation tax, moreover, expressly provides that the corporation tax is "in addition to all other taxes now required of them by law," and "the payment of this tax shall not be construed so as to relieve the corporation or agent of any other license or occupation tax whatever." Acts 1918, p. 54.

Nor is there any difficulty about the severability of this tax as between taxable and nontaxable oil. Even where a lump sum was laid on a business which included both interstate commerce, which was not taxable, and intrastate business, which was, the tax was held enforceable as to the latter. Kehrer v. Stewart, 197 U. S. 60, 25 Sup. Ct. 403, 49 L. Ed. 663. When, as here, there is no lump tax, and the subjects of taxation are readily separated as being either interstate commerce or otherwise, no question of severability can possibly arise. Ratterman v. Western Union Tel. Co., 127 U. S. 411, 8 Sup. Ct. 1127, 32 L. Ed. 229; Singer Co. v. Alabama, 233 U. S. 304, 34 Sup. Ct. 493, 58 L. Ed. 974.

[3] 2. Passing to the question of the state Constitution (Railroad Co. v. Garrett, 231 U. S. 301, 303, 34 Sup. Ct. 48, 58 L. Ed. 229), article 7, section 2, provides:

"All taxation shall be uniform upon the same class of subjects, and ad valorem on all property subject to be taxed within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws."

The tax here in question is not ad valorem, and, if a property tax, is in conflict therewith. While the occasion of the tax is property, and its burden falls upon property, and for many purposes the property might be said to be taxed, we think the tax on property referred to in the Constitution is a tax imposed on the ownership of property. In Johnson v. Mayor, 62 Ga. 646, taxes thus levied "for each and every one-horse wagon, one-horse dray, or one-horse express wagon, hauling in the city, $25; for each two-horse do., $50," and similar impositions, were held not on property, but on business, and not in conflict with the Constitution. A similar ruling was made in Davis v. Mayor, 64 Ga. 128, 37 Am. Rep. 60. In the leading case of Atlanta Association v. Stewart, 109 Ga. 80, on page 87, 35 S. E. 73, 76, while dealing with a state tax of "one dollar for each telephone station or box," it is said:

"Can this be claimed to be a tax on property? There is not the slightest hint that the value of the box or station has any connection with the tax. For a station or box worth $25 the company would pay $1; for another costing or worth $1,000 it would pay exactly the same. No effort is made to ascertain value, or to deal with property as to its value. The company might have a building and real estate worth $1,000,000, and furniture and other property worth $10,000, or it might have no property, and operate with rented property; but this clause has no reference at all to property, and would be the same in either case. It simply refers to the number of stations or boxes rented or used. A tax on a person, graduated according to the number of a certain kind of articles, apparatus, or machines employed by him or it, without regard to value, is unquestionably not a property tax, but an occupation tax."

A similar ruling was made as to a tax on gross receipts. The tax on inheritances was held not to be a property tax, but a privilege tax, and valid, though not ad valorem, in Farkas v. Smith, 147 Ga. 503, 94 S. E. 1016.

There are difficulties about terming this oil tax an occupation tax, for it is not payable by each person who successively stores or sells the oil. It more resembles excises commonly laid by the United States upon articles and transactions evidenced by stamps or brands affixed to the articles. Perhaps it is best described by the term "privilege tax," used by the Supreme Court of the similar inspection fees in the Graves Case. The Legislature, by reason of the danger of oils whose qualities are uncertain, might have prohibited the storage or sale of them, and certainly could unless they be inspected. The privilege of storage and sale after inspection is what the tax is for. But it is unnecessary to name it, if it be not a property tax.

The other provision, "taxation shall be uniform on the same class of subjects," is not offended. The peculiarities of oils and the handling thereof are such as to make them reasonably a subject of classification. Since the law requires the inspector to travel as much as 30 miles to inspect, expenses and mileage being paid by the state (Park's Code, 1806), it is evident that inspection of the smaller lots of oil might be at a loss. There is thus reason for the subclassification as to quantity, with a higher fee for smaller lots. Sawtell v. Atlanta, 138 Ga. 687, 75 S. E. 982; Farkas v. Smith, 147 Ga. 503, 94 S. E. 1016. The Georgia Constitution forbids no form or mode of taxation generally permissible, but only requires specified uniformities. The form of taxation by excessive fees for so-called inspection of many articles has been for many years resorted to for revenue. Many public officers have been put on salaries, and their fees which exceed their salaries required to be turned into the treasury. This long-continued and unquestioned practice, in the absence of any decision by the state courts, would make us reluctant to declare the act in question contrary to the state Constitution.

It will accordingly be adjudged that the collection of inspection fees, so called, be enjoined and restrained in respect to oils imported by the petitioner for sale in the original package and so sold, and that an injunction will be refused as to oils imported for indefinite storage or for sale after breaking the original package.

WALKER, Circuit Judge (dissenting in part). I concur in the conclusion that, as to oil imported by the plaintiff for sale in the containers in which it is brought into the state, and so sold, the collection of the inspection fees should be enjoined; but I do not concur in the conclusion that, as to oil imported for use or sale, the prescribed fees may be exacted upon the removal of such oil from the containers in which it was imported.

I am unable to find any basis in the provisions of the statute in question for the conclusion that it is anything but an inspection measure. The fees prescribed cannot well be considered as exacted for anything but inspection, where nothing is required but inspection and payment for it, the payment not conferring on the payer any right or privilege not equally possessed by others who, without paying such fees, may use, keep, or store for sale, or otherwise deal in, the inspected oil. The statute is materially different from the one which was passed on in the case of Askren et al. v. Continental Oil Co. (April 19, 1920) 253 U. S. ——, 40 Sup. Ct. 355, 64 L. Ed. ——. The statute there in question was held to impose a tax upon the privilege of dealing in gasoline in the state of New Mexico. It did not require any inspection of gasoline. It imposed a tax on the privilege of dealing in that commodity. It was held that, so far as such dealing was in imported gasoline while still in the containers in which it was imported, it was not subject to the tax.

The statute now in question exacts the payment of fees for inspecting oil, and does not tax oil as property in Georgia, or the privilege of dealing in it there. By it the police power of requiring oil to be inspected before it is used or sold is so exercised as to be the means of raising a large revenue for the state. To sustain the statute to the extent indicated in the foregoing opinion requires the affirmance of the proposition that, as to imported goods, which, with intent to use or sell them, have been removed from the original containers in which they were brought into a state, a charge for inspection grossly in excess of the expenses involved may be exacted as the price of such goods becoming the subject of lawful use or disposition in the state. In Standard Oil Co. v. Graves, 249 U. S. 389, 39 Sup. Ct. 320, 63 L. Ed. 662, it was decided that such an inspection charge on imported goods is an unauthorized burden on interstate commerce, "certainly while the same are in the original receptacles or containers in which they are brought into the state."

So far as the writer is informed, it has not been authoritatively decided that the payment of an excessive inspection fee may be made the price of protecting imported goods, even after they have been stopped in a state and been removed from the containers in which they were brought in, from being treated as contraband or outlawed. If such an obstacle may be put in the way of imported commodities acquiring the beneficial qualities of property, the prohibition of interference with interstate or foreign commerce may easily be defeated. If such an exaction is not subject to the limitation imposed on inspection charges, then all imported commodities, whether properly subject to inspection or not, may be subjected to such exactions as a state may choose to impose as conditions precedent to their acquiring the capacity of be-

ing lawfully dealt in. As to such a commodity the charge amounts to a toll on the movement of it into domestic commerce. It is believed that as to oil coming from beyond the borders of the state the limit of the allowable toll on its transition into intrastate commerce is the reasonable expense of ascertaining if it is fit for use or sale.

It is not questioned that, as to imported goods which have been removed from the original containers in which they were imported, a state has the power of taxing either the goods as property, or the carrying on of any business or the exercise of any privilege in which the goods figure. This does not amount to saying that a state has the additional power of charging what it pleases as the price of such goods becoming the subject of lawful commerce or dealings within its borders. If a state can require the payment of such fees as those in question, it also may exact similar payments before shoes, hats, calico, nails, horse collars, or any kind of commodity can be used or sold. It is not believed that such an exaction properly can be regarded as a property, occupation, or privilege tax. No property, occupation, or privilege is taxed. If, on the ground that it is possible for a commodity to have its origin in a state, it may be subjected to such charges for inspection, there is an easy way of creating an obstacle to any imported commodity entering into the commerce of a state. No commodity which is a proper subject of inspection can be moved with the required freedom from one state into another, if it is subject to such an exaction as the one in question. If such an exaction can be made, without being kept within the limit fixed for inspection charges, any commodity coming into a state from beyond its borders may be met by a similar barrier. A denial of the state's right to make such exaction does not amount to a denial of its taxing power, or of its police power of making reasonable regulations for the protection of its people.