THE PEOPLE OF THE STATE OF NEW YORK ex rel. D. W. GRIFFITH, INC., Relator, v. MICHAEL F. LOUGHMAN and Others, Constituting the State Tax Commission, Respondents.*

Third Department, June 22, 1928.

---

* Affd., 249 N. Y. 369.

*Albert H. T. Banzhaf* [*E. Crosby Kindleberger, M. E. Harby* and *Edward G. Zimmer* of counsel], for the relator.

*Albert Ottinger, Attorney-General* [*Wendell P. Brown* and *Henry S. Manley* of counsel], for the respondents.

VAN KIRK, P. J.   The relator, D. W. Griffith, Inc., is a foreign corporation organized under the laws of Maryland, June 30, 1920. The authorized capital was 500,000 shares of stock having no stated par value, called " no par stock."   Application was made to the Secretary of State of New York on July 6, 1920, for permission to do business in this State.   On July 9, 1920, the Secretary issued a certificate of permission.   At that time, under section 181 of the Tax Law (as amd. by Laws of 1917, chap. 490), every foreign corporation, with exceptions not here applicable, doing business in this State, was required to pay " a license fee of one-eighth of one per centum for the privilege of exercising its corporate franchises or carrying on its business in such corporate or organized capacity in this State, to be computed upon the basis of the capital stock employed by it within this State, during the first year of carrying on its business in this State;   *   *   *   and if any year thereafter any such corporation shall employ more than eight thousand dollars of its capital stock within this State on which a license fee has not been paid then a license fee at the rate of one-eighth of one per centum shall be due and payable upon any such increase.   *   *   *   No action shall be maintained or recovery had in any of the courts in this State by such foreign corporation after thirteen months from the time of beginning such business within the State, without obtaining a receipt from the Comptroller for the payment of the license fee upon the capital stock   *   *   *."
In this statute there was no reference to a no par stock and the license fee is not payable until the corporation has done business for one year within the State.   Within the first year during which this corporation did business in the State, and on May 12, 1921, an amendment to section 181 took effect, providing: " The issued capital stock of any corporation issuing shares without designated monetary value shall pay for the use of the State a license fee of six cents on each such share employed in this State, as hereinbefore

provided." (Laws of 1921, chap. 705.)■ At the expiration of its first year relator filed with the State Tax Commission its required report. The tax was assessed at the rate fixed in the amendment of May twelfth at the sum of $29,491.86, and it is conceded that the amount so calculated is correct if the amendment is applicable. If the tax rate as it existed just prior to May 12, 1921, were applied, the license fee would be approximately $4,000.

The relator's position is, *first*, that its license fee should be calculated at the rate fixed in the statute as it existed in July, 1920; and *second*, that, if the new statute is held to be applicable to this case, it is unconstitutional as against this relator.

The relator's argument is that, in July, 1920, it had procured authority to do business in the State and was at all times thereafter lawfully in the State; that, when it received this authority, the license fee it expected and agreed to pay was that declared in the statute as it existed and stood at that time; that there was an implied contract between it and the State that, upon paying its tax or fee calculated upon this rate, it would be allowed to continue to do business in the State; that to apply the rate fixed by the May twelfth amendment is to construe this amendment as retroactive in effect.

It is the general rule that laws are not to be construed as applying to cases which arose before their passage, unless that intention be clearly declared. (*Shwab* v. *Doyle*, 258 U. S. 529.) In the amendment of May twelfth no such intention is declared. We think that the transaction was not completed when the Secretary of State issued to relator its certificate of permission to do business here. At that time no license fee or tax was paid. It was not due until the end of the first year. Until then it could not be paid because the tax base could not until then be computed. Whatever implied agreement there was between the relator and the State did not go beyond this, that the relator could do business in this State for thirteen months, upon condition that, at the end of the year, it would pay the license fee required by the law of the State in the manner and at the times required. The first payment of the fee was to be computed upon the basis of the capital stock employed by it within the year; and if, at any time thereafter, it employs additional capital on which a license fee has not been paid, then a fee shall be payable upon the excess thereof over the capital used during the first year. If the relator's argument is sound, then any taxes due because of increases in its capital stock after the first year must be assessed at the rate fixed by the State in July, 1920;

that is, the implied contract with the State would be that it would at no time change the tax rate. We think that the tax rate must have been understood to be the rate which existed at the time the tax is payable; that the " case " before us did not arise until the license tax was due and payable. Taxes are assessed and collected to pay the annual charges and expenses of the government. Its tax rate must be changed as its necessities may require. The general tax rate for the expenses of government during a year is fixed at the end of the year. The assessment is made at the time of the entry on the assessment roll. (*People ex rel. Mygatt* v. *Supervisors of Chenango County*, 11 N. Y. 563.) We think a State may impose a tax based upon income of a previous year. (*Stockdale* v. *Ins. Companies*, 87 U. S. [20 Wall.] 323, 331;. *Brushaber* v. *Union Pac. R. R. Co.*, 240 id. 1, 20.) The State Income Tax Law took effect May 14, 1919 (Laws of 1919, chap. 627), yet it imposed this tax upon residents and non-residents carrying on business in this State, and provided: " Such tax shall first be levied, collected and paid in the year nineteen hundred and twenty upon and with respect to the taxable income for the calendar year nineteen hundred and nineteen, or for any taxable year ending during the year nineteen hundred and nineteen." (Tax Law, § 351.) A part of the year 1919 had expired before the act took effect. The income tax rates, both under the Federal and State law, are frequently changed and the taxes are assessed upon incomes, part of which have been received prior to the change. These State taxes must be paid by non-residents upon their incomes derived from business carried on in this State. We think there is in the present case no express agreement and that there can be no implied agreement that limits or restrains the State in the exercise of its taxing power from changing a tax rate. (*Home Ins. Co.* v. *City Council*, 93 U. S. 116; *Roberts & Schaefer Co.* v. *Emmerson*, 271 id. 50, 58.) It was held in *Home Ins. Co.* v. *City Council* (*supra*, 122) that, after a fee of one per centum upon the gross amount of premiums received had been paid for the license to transact an insurance business in the State of Georgia for one year, a further license tax imposed by a later legislative act could be assessed and collected; that the license when issued was only a receipt for the tax. And the court said: " We find no semblance of a contract that additional taxes should not be imposed." A State does not, by doubtful words, surrender its right to tax. (*Erie R. Co.* v. *Pennsylvania*, 88 U. S. [21 Wall.] 492, 498; *Memphis Gas Co.* v. *Shelby County*, 109 id. 398.) We think the tax rate as it was fixed at the time the tax became due and payable applies if the amendment be constitutional.

The amendment of May twelfth is claimed to be unconstitutional under section 1 of the Fourteenth Amendment of the Federal Constitution, which assures to all "the equal protection of the laws." The rate therein fixed is to be applied whatever the value of the no par stock. Thus by using this arbitrary rate no regard is given to the actual capital employed by relator in this State. If the value of the no par stock be forty-eight dollars per share, the tax computed at one-eighth of one per cent would be six cents; if one hundred dollars per share it would be twelve and one-half cents; if eight dollars a share it would be one cent. Under this arbitrary rate it may readily be seen that unequal taxation, upon foreign corporations doing business in the State, would result. A corporation that issued no par stock worth eight dollars per share would pay the same rate as one which had issued an equal number of no par shares worth one hundred dollars per share.. In the present case the value of the no par stock is claimed to be less than eight dollars per share. Its tax is larger than the tax imposed on other foreign corporations which have like privileges and the same number of no par shares, but have a much larger capital employed in the State. "Thus the relator is unfavorably affected by the discrimination of which he [it] complains." (*Roberts & Schaefer Co.* v. *Emmerson, supra,* 53, 54; *Air-Way Corp.* v. *Day,* 266 U. S. 71.) In *People ex rel. Terminal & Town Taxi Corp.* v. *Walsh* (202 App. Div. 651) we held that an act of the Legislature arbitrarily fixing one hundred dollars per share as the value of no par stock of a foreign corporation doing business in this State is unconstitutional because it would result in unequal taxation. That in that case it was the value of the stock, the tax base, which caused the unequal taxation, while here it is the rate which is to be applied to the tax base, does not affect the conclusion.

Section 180 of the Tax Law regulates the organization tax paid by domestic corporations. By an amendment of that section (Laws of 1921, chap. 705)█ a five-cent rate is fixed on no par value shares for calculating the organization tax. From what we have said it does not follow that the act fixing this five-cent rate is unconstitutional since it applies to domestic corporations only. (*Roberts & Schaefer Co.* v. *Emmerson, supra.*)

The provision fixing a six-cent rate being unconstitutional and the act as it existed before the amendment not having been repealed, the tax should be calculated at one-eighth of one per cent as required prior to the amendment of May twelfth. (*People ex rel. Terminal & Town Taxi Corp.* v. *Walsh, supra.*)

The determination should be annulled, with fifty dollars costs and disbursements, and the matter remitted to the State Tax Commission to compute the tax in accordance with this opinion.

HASBROUCK, J., concurs; HILL and WHITMYER, JJ., solely because of the decision in *People ex rel. Terminal & Town Taxi Corp.* v. *Walsh* (202 App. Div. 651); DAVIS, J., agrees with VAN KIRK, P. J., on the first proposition stated in the opinion that the tax as fixed under the statute taking effect May 12, 1921, is correct if the amendment be constitutional, but dissents from the conclusion that the statute is unconstitutional, on the ground that the initial tax rate for the license permitting a foreign corporation to do business in this State is not discriminatory.

Determination annulled, with fifty dollars costs and disbursements, and the matter remitted to the State Tax Commission to compute the tax in accordance with the opinion.