[No. 16104.   Department One.   January 5, 1921.]

SHELL COMPANY OF CALIFORNIA, *Respondent,* v.. THE STATE OF WASHINGTON, *Appellant.*[1]

COMMERCE (1, 5)—INSPECTION (1)—INTERSTATE COMMERCE—EXCESSIVE INSPECTION FEES. Laws of 1907, p. 412, levying a grossly excessive inspection tax upon illuminating oils is unconstitutional as to oils in interstate commerce as interfering with the commerce clause of the Federal constitution; but it is enforceable as an occupation tax in so far as it authorizes the collection of a tax upon products that have lost their interstate character by having been removed from the original packages or put into indefinite storage in this state.

INSPECTION (2)—SUBJECTS OF INSPECTION. The tax on illuminating oils, being a revenue measure, is sustainable without reference to the police power or relation to the public safety or health.

INSPECTION (5)—ACTION TO RECOVER FEES—PLEADING—COMPLAINT. In an action to recover oil inspection fees, exacted under Laws of 1907, p. 412, the complaint is demurrable in not showing that the products were not still in interstate commerce by reason of not being in the original containers or in indefinite storage, at the time the tax was collected.

Appeal from a judgment of the superior court for Thurston county, Wright, J., entered March 10, 1920,

[1]Reported in 194 Pac. 835.

in favor of the plaintiff, upon overruling a demurrer to the complaint, in an action to recover oil inspection fees paid under protest. Reversed.

*The Attorney General* (*R. M. Burgunder,* of counsel), for appellant.

*Tucker & Hyland,* for respondent.

*Farrell, Kane & Stratton, amicus curiae.*

MACKINTOSH, J.—The Shell Company of California seeks, by its second cause of action, to recover from the state of Washington the sum of $15,973.34, the amount of the fees paid by it for oil inspection under the provisions of Laws of 1907, p. 412, ch. 192, for the three years prior to the commencement of its suit. The complaint alleges that the Shell Company is engaged in the state of California in producing and buying crude petroleum oil and in refining and manufacturing it and shipping the products from California to Washington, where the same are sold in large quantities; that none of the products are manufactured by the oil company in the state of Washington; that the company maintains in this state buildings and machinery and the necessary equipment for receiving, selling and disposing of its products; that Laws of 1907, p. 412, ch. 192, provides that these products, before being sold or offered for sale, shall be inspected by the state oil inspector, and a certificate issued, and the barrel or receptacle which contains the product shall be labeled; that the act further provides a schedule of fees to be paid for inspection, and makes it a misdemeanor for any one to sell or attempt to sell any of the products without inspection; that the state oil inspector sought to enforce this act as it related to the respondent's products and similar products of other companies; that from June 30, 1905, to December 31, 1914, there

were collected in fees for inspection the sum of $335,776.30; that there were disbursed in expenditures concerning the inspection the sum of $80,103.37, the state deriving a net revenue from the operation of the act in the sum of $255,672.93. The complaint further alleged that this act violates art. 1, § 8, of the Federal constitution, and that the respondent was required to pay the illegal oil inspection charges, which payments were made under protest, and seeks recovery of the amount so paid. To the complaint the appellant demurred; the demurrer was overruled, and judgment was entered in accordance with the prayer of the complaint.

Laws of 1907, p. 412, ch. 192, is not a stranger to this court. Its constitutionality was passed on by the supreme court of this state in the case of the *Standard Oil Company v. Graves,* 94 Wash. 291, 162 Pac. 558, where it was held that the act was not unconstitutional as interfering with the commerce clause of the Federal constitution, and that the act is not a tax upon property but only ''upon the privilege of selling or disposing of such property. Whether it is called an occupation tax, a tax upon the right to sell, or an excise tax is immaterial.'' Section 3 of the act is as follows:

''All gasoline, benzine, distillate or other volatile product of petroleum intended for use or consumption in this state for illuminating, manufacturing, domestic or power purposes, before being sold or offered for sale by any firm, corporation, manufacturer, dealer, vendor, or other person, shall first be inspected and tested for its specific gravity, and, after having been so inspected and tested, the state oil inspector, or his deputies, shall issue a certificate of inspection thereof and shall cause every package, barrel, cask or other receptacle thereof to be labeled or branded with its exact specific gravity over his official signature. .

''It shall also be the duty of said state oil inspector,

or his deputies, to examine and test the quality of all illuminating oils offered for sale for consumption within this state, and to reject for illuminating purposes all oils which will take fire and burn at a temperature less than 120 degrees Fahr. thermometer. The quantity of oil used in making such test shall not be less than one-half pint, and the oil tester adopted and used shall be the open cup Taglibue electric spark, or one similar in construction and result. If the oil so inspected shall meet such requirement he shall brand or label each and every package, barrel, cask or other receptacle containing the same with the word "approved," and the date of such inspection, over his official signature. Should oil so tested or examined be contained in tank cars, upon finding the oil so contained to meet the requirements hereinbefore specified, he shall furnish the owner or person in charge of such oil with a certificate stating the number and letters or other marks of designation of the tank car inspected, the number of gallons of oil contained in it, the date of inspection, the name of the owner, the city or town in which such tank was inspected, the temperature at which such oil took fire and burned and that such oil is approved. Upon each barrel, cask or other receptacle, drawn from such tank car and offered for sale, shall be fixed the same brand or device as is required for oil inspected in barrels or casks.

"If the oil or other petroleum product so tested shall not meet said requirements the state oil inspector, or his deputies, shall mark in plain letters on the package, barrel or cask, the word "rejected" over his official signature, and if any oil or other petroleum product contained in tank car shall fail to meet said requirements it shall be rejected by the state oil inspector or his deputy, and a written notice, stating the number and letters or other marks of designation of the tank car so rejected, the date and place of inspection, and that the oil or other petroleum product has been rejected, which notice, signed by the state oil inspector, or his deputy, shall be placed in the hands of the person owning or in charge of such oil or other petroleum product.

"All illuminating oils, gasoline, benzine, distillate or any volatile product of petroleum, manufactured or refined in this state shall be inspected before being removed from the manufactory or refinery.

"Whenever complaint is made to the oil inspector in regard to the illuminating qualities of illuminating oil that may have been so inspected, it shall be his duty to secure a sample of such oils complained of, which shall be turned over to the chemist of the state university, who shall thoroughly analyze and test said oils for their illuminating qualities. If upon such analysis and test the chemist of the state university shall decide that although the oil be of the required test it is of inferior illuminating quality, then the oil inspector, upon receipt of the chemist's report, shall brand such oil: 'State of Washington. Rejected. Quality inferior,' with the date of inspection over his official signature. Such report of the state chemist shall be prima facie evidence of the character and quality of the oil or other petroleum product so analyzed and tested."

The supreme court of the United States was called upon to review the *Graves* case, *supra,* in *Standard Oil Company v. Graves,* 249 U. S. 389, and held the act to be unconstitutional, declaring that the inspection fees were so grossly in excess of the cost of inspection that they amounted to a direct burden upon interstate commerce. In the *Graves* case, it was not necessary for the supreme court to, nor did it, consider the question of whether the act was valid as a charge upon property not in interstate commerce.

In the case of *Askren v. Continental Oil Company,* 252 U. S. 444, decided by the supreme court of the United States on April 19, 1920, this question, however, was presented. In the *Askren* case, it appears that the state of New Mexico passed an act which was entitled, "An Act providing for an excise tax upon the sale or use of gasoline and for a license tax to be paid by dis-

tributors, retail dealers, therein," etc. The act provided that every distributor and retail dealer in gasoline should pay an annual license tax, and an excise tax of 2 cents per gallon was charged against the gasoline used or sold in the state, the act providing a penalty for failure to comply with its terms. The supreme court of the United States held that the New Mexico act was not an inspection act merely, and said:

"Considering its provisions and the effect of the act, it is a tax upon the privilege of dealing in gasoline in the state of New Mexico."

The Continental Oil Company was engaged in the buying and selling of gasoline outside of the state of New Mexico and shipping it thereto. Some of these shipments were in tank cars, barrels and packages, the whole of the contents thereof being sold to a single customer before the container in which the gasoline had been shipped was broken. Another method of dealing in gasoline was for the company to ship it in tank cars, barrels and packages, selling such gasoline from the containers as the purchaser might require. The supreme court said:

"As to the gasoline brought into the state in the tank cars, or in the original packages, and so sold, we are unable to discover any difference in plan of importation and sale between the instant case and that before us in *Standard Oil Company v. Graves* . . . in which we held that a tax, which was in effect a privilege tax, as is the one under consideration, providing for a levy of fees in excess of the cost of inspection, amounted to a direct burden on interstate commerce. In that case we reaffirmed what had often been adjudicated heretofore in this court, that the direct and necessary effect of such legislation was to impose a burden upon interstate commerce; that under the Federal constitution the importer of such products from another state into his own, for sale in the original package,

had a right to sell the same in such packages without being taxed for the privilege by taxation of the sort here involved. Upon this branch of the case we deem it only necessary to refer to that case, and the cases therein cited, as establishing the proposition that the license tax upon the sale of gasoline brought into the state in tank cars, or original packages, and thus sold, is beyond the taxing power of the state.

"The plaintiffs state in the bills that their business in part consists in selling gasoline in retail quantities to suit purchasers. A business of this sort, although the gasoline was brought into the state in interstate commerce, is properly taxable by the laws of the state.

"Much is made of the fact that New Mexico does not produce gasoline, and all of it that is dealt in within that state must be brought in from other states. But, so long as there is no discrimination against the products of another state, and none is shown from the mere fact that the gasoline thus stored and dealt in is not beyond the taxing power of the state. . . .

"Sales of the class last mentioned would be a subject of taxation within the legitimate power of the state. But from the averments of the bills it is impossible to determine the relative importance of this part of the business as compared with that which is non-taxable, and at this preliminary stage of the cases we will not go into the question whether the act is separable, and capable of being sustained so far as it imposes a tax upon business legitimately taxable. That question may be reserved for the final hearing."

The situation, then, is this: That Laws of 1907, p. 412, ch. 192, is not in reality an inspection act for the reason that it calls for an excessive amount; but is, as has been said by this court in the *Graves* case, *supra,* and by the United States supreme court in the *Askren* case, *supra,* a privilege tax. Not being an inspection act, it cannot operate upon petroleum products while they are in interstate commerce, but the act is constitutional and valid as a privilege tax upon all property in the state not in interstate commerce, whether that

property was originally produced in this state or came into the state as interstate commerce, so long as it operates upon all similar products in a similar manner.

The United States district court for the northern district of Georgia, in the case of *Texas Company v. Brown,* 266 Fed. 577, decided June 28, 1920, had under consideration an act of Georgia providing for the inspection of petroleum, which act, as does the Washington act, called for fees aggregating many times the cost of inspection service. That court also held that such an act was a revenue statute and unconstitutional so far as it imposed a tax upon interstate commerce while the products were in the state for sale in the original containers, but that the act was valid as to imported products after they had lost their status of interstate commerce, as by the breaking of the original package, or by indefinite storage. The court further held that a state might pass an inspection act which would be valid as against products still in interstate commerce if the fees which the act called for were not unduly in excess of the cost of inspection, following the holding in *Pure Oil Company v. Minnesota,* 248 U. S. 158; but that, where the inspection fees are greatly in excess of the cost of inspection, the act was invalid as to interstate commerce, following the *Graves* case, *supra,* but said in regard to the act, which is nearly identical with the Washington one, that, although it was professedly an inspection act, it was in reality a tax, and that it was valid as to property not in interstate commerce, and, citing the *Askren* case, *supra,* in support of that conclusion said:

"We accordingly hold that the importations of petitioner which are indefinitely stored within the state, or are resold there after breaking the original packages, are subject, not only to inspection, but to the tax imposed, so soon as the interstate transportation of

them is ended. The fact that such oils must inevitably meet the tax before they can be used otherwise than for sale in the original packages is not material. This is true of all general taxation. If there is no discrimination because of their being imported, they pass under the taxing power of the state, as under its protection, so soon as they pass out of interstate commerce or by a sale or breaking of the original packages by the importer, or by indefinite storage.''

The next question we must consider is whether the act on its face purporting to cover petroleum products both in and out of interstate commerce is subject to segregation so that it can be enforced against property not in interstate commerce. This question was not noticed in the *Askren* case, but was left open to be decided upon the final hearing. In *Texas Company v. Brown, supra,* the question was considered, and the court said:

''Nor is there any difficulty about the severability of this tax as between taxable and non-taxable oil. Even where a lump sum was laid on a business which included both interstate commerce, which was not taxable, and intrastate business, which was, the tax was held enforceable as to the latter. . . . When, as here, there is no lump tax, and the subjects of taxation are readily separated as being either interstate commerce or otherwise, no question of severability can possibly arise. . . .''

So far as the act itself is concerned, there is nothing on the face of it which would indicate that it is not subject to segregation, and the fact that a portion of the act is invalid will not prevent the operation of that portion which is valid. The only difficulty that can be suggested is the difficulty in the administration of the act. This, however, does not seem to be a serious one, for the administering authority, under the act, would be empowered to collect the tax only upon such petroleum

products as had once been in interstate commerce but had lost that character by having been removed from the original packages, or by having remained within the state so long within the original packages in indefinite storage that they would be held to have lost their character of interstate commerce.

Passing now to the position taken by the respondent and *Amicus Curiae* in opposition to the foregoing conclusions, we find that they argue that there is a difference between the *Askren* case and the instant case for the reason that the New Mexico act did not call for grossly excessive inspection charges, whereas our act of 1907 did. This distinction is not valid for the reason that the courts have already held that our act is not an inspection act; that, like the New Mexico act, it is a revenue measure and the fact that it may have been designated by the legislature an inspection act does not make it one in fact. *Wagner v. City of Covington,* 251 U. S. 95; *St. Louis Southwestern Ry. v. Arkansas,* 235 U. S. 350. The supreme court of the United States, as a matter of fact, recognized in the *Askren* case that the two acts were identical in effect, for it said that the Washington act was ''in effect a privilege tax, as is the one under consideration.''

It is also claimed that, where the petroleum products were not held for sale in the original packages, they were still beyond the taxing power of the state, if they had gone into the state as interstate commerce. The *Askren* case disposed of this contention, as would appear from the above quotation. See, also, *Wagner v. City of Covington, supra.*

It is next claimed by the respondent that, the act not requiring the products to have any specific gravity, but merely calling for an inspection for the purpose of ascertaining the specific gravity, the act had no

relation to the public safety and welfare. The answer to this is that the act, as we interpret it, is a revenue measure and is not an act solely to be sustained as an exercise of the police power. The fact that there are some elements of police power connected with it will not affect the validity of the act. *Walla Walla v. Ferdon,* 21 Wash. 308, 57 Pac. 796; *State ex rel. Davis-Smith Co. v. Clausen,* 65 Wash. 156, 117 Pac. 1101, 37 L. R. A. (N. S.) 466, 2 N. C. C. A. 823, 3 N. C. C. A. 599; *Sperry & Hutchinson Co. v. Tacoma,* 68 Wash. 254, 122 Pac. 1060, L. R. A. 1915B 241; *State v. Mountain Timber Co.,* 75 Wash. 581, 135 Pac. 645, L. R. A. 1917D 10, 4 N. C. C. A. 811.

The next claim is that the act must be construed as applied to all sales because by its language it applies to all sales and therefore includes petroleum products held for sale in the original package. This question we have already heretofore discussed, and have arrived at the determination that, eliminating from the act those unconstitutional provisions, there still remains a complete act capable of enforcement; and it not being clear that the act would not have been passed except for the unconstitutional provisions, it will be sustained.

The last objection is as to whether the question we have been considering was properly presentable by demurrer. Eliminating from the complaint the conclusions of law and regarding only the facts plead, we will see that the respondent alleges that it brought into the state petroleum products for the purpose of sale, and that under Laws of 1907, p. 412, ch. 192, the state had collected taxes thereon. No facts were plead as to whether these products still were in the original containers at the time that the tax was levied and collected, nor how long they had been within the state at the time of the taxation. The act being, as we

have determined, valid as a taxing act upon property brought into the state as interstate commerce, but which has lost that characteristic by having been removed from the original containers or having been put into indefinite storage, there is nothing in the complaint to negative the correctness of the imposition of the tax except the conclusion of law that the tax was improper by reason of the fact that the act of 1907 was unconstitutional and invalid. If the respondent paid under protest taxes upon petroleum products which were still interstate commerce, it could by its complaint have so declared. Not having done so, the demurrer should have been sustained, with the privilege to the respondent to amend its complaint so as to show that some portion or all of the payments which it had made were made upon petroleum products while they were still interstate commerce.

For the reasons stated, the superior court was in error in overruling the demurrer to the second cause of action, and the cause is remanded with instructions to sustain the demurrer, granting to the respondent the privilege of amending its complaint in conformity with the suggestions contained herein. Judgment reversed.

HOLCOMB, C. J., BRIDGES, FULLERTON, and PARKER, JJ., concur.