[No. 28352. *En Banc.* June 30, 1941.]

THE STATE OF WASHINGTON, *on the Relation of
Herbert L. Collier, as Treasurer of the City of
Seattle, Plaintiff,* v. CLIFF YELLE, *as
State Auditor, Respondent.*[1]

[1]Reported in 115 P. (2d) 373.

A. C. Van Soelen and J. Ambler Newton, for relator.

The Attorney General, W. A. Toner, Shirley R. Marsh, and E. P. Donnelly, Assistants, for respondent.

BEALS, J.—Herbert L. Collier, as treasurer of the city of Seattle, relator herein, filed in this court his verified petition asking for a writ of mandamus directed to Cliff Yelle, as auditor of the state of Washington, respondent in this proceeding, praying that a writ of mandamus issue out of this court, directing respondent to honor a voucher, dated February 14, 1941, drawn by relator as treasurer of the city of Seattle, directed to respondent as state auditor, requiring respondent to deliver to relator $75,685.50, that amount being five per cent of the aggregate of monthly credits to the city of Seattle in the motor vehicle fund for the present biennium, to February 1, 1941.

An alternative writ of mandamus was issued, and a date fixed for a hearing thereon before the court sitting En Banc. At the time appointed, the respondent appeared, by the attorney general and his assistant, and

orally argued that the writ should not issue. A type-written brief was also filed. The matter was again set for hearing before the court *En Banc,* further briefs were filed, in which questions suggested by the court were discussed, and the matter was reargued.

Respondent does not contend that the statements contained in relator's petition for the writ are not true. In effect, a demurrer to the petition for the writ was interposed, and we so consider the issue presented. The matter was submitted upon the question of the validity of the portion of chapter 181, Laws of 1939, hereinafter referred to.

Relator drew the voucher above referred to pursuant to Laws of 1939, chapter 181, p. 550, § 4 (Rem. Rev. Stat., Vol. 7A (Sup.), § 6600-3a [P. C. § 2696-124]), an act relating to public highways, establishing the motor vehicle fund as a permanent fund, providing for the distribution of funds accruing to the motor vehicle fund, making appropriations therefrom, etc. The pertinent portions of § 4 of the act referred to read as follows:

"Funds credited to the incorporated cities and towns of the State of Washington as set forth in sub-section (a) of section 3 above shall be subject to deduction and distribution as follows:

"(a) One and one-half per cent (1½%) of such sums shall be deducted monthly as such sums are credited and set aside for the use of the Director of Highways for the supervision of the work and expenditures of such incorporated cities and towns on the city and town streets thereof;

"(b) The balance remaining to the credit of incorporated cities and towns after such deduction shall be credited in the motor vehicle fund to each of the several incorporated cities and towns in the direct proportion that the population of each thereof shall bear to the population of all incorporated cities and towns in the state, such credit to be made monthly as such funds accrue. . . . *Provided further,* That in

the case of Aurora Avenue in the City of Seattle designated by the Director of Highways as a city street forming a part of the route of a primary state highway, and for the construction and improvement of which the said city has issued bonds and such bonds are outstanding and are delinquent and unpaid, and with respect thereto there are outstanding and unpaid warrants, which are payable from a local improvement district or condemnation award fund, there shall be set aside and paid in the manner and for the purposes hereinafter provided an amount equal to five per cent (5%) of the monthly payment or allocation to the City of Seattle from the motor vehicle fund, or the amount that may be placed to the credit of the City of Seattle in the motor vehicle fund for city street purposes, said payment to be disposed of as follows: The City Treasurer shall monthly determine the amount equal to five per cent (5%) of the monthly credit to the City of Seattle in the motor vehicle fund which shall become available for the purposes of this sub-section, and shall compute the percentage that the monthly payment bears to the aggregate original assessments against all the real estate of the said Aurora improvement district to which the payment is to apply as herein provided, and from said monthly payment the City Treasurer shall first pay to every person who has paid any assessment or any installment thereof, of said district, the same percentage of the assessment payment, and shall credit and deduct from the amount of any unpaid assessment, or installment thereof, of said district, the same percentage of the unpaid assessment, or installment thereof. All computations, payments, credits and deductions herein provided for shall be made on the assessment levy, or installment, without including any interest for delinquency. Such five per cent (5%) shall be paid by the State Auditor to the City Treasurer on proper vouchers therefor."

Respondent auditor resists the issuance of the writ, contending that the portion of § 4 (herein referred to as the proviso) providing for the appropriation of certain motor vehicle funds to the payment of Aurora

avenue assessments is unconstitutional as in violation of the following sections of the state constitution:

Article II, § 28, subd. 10: "The legislature is prohibited from enacting any private or special laws in the following cases:— . . .

"10. Releasing or extinguishing, in whole or in part, the indebtedness, liability, or other obligation of any person or corporation to this state, or to any municipal corporation therein."

Article VIII, § 5: "The credit of the state shall not, in any manner, be given or loaned to or in aid of any individual, association, company, or corporation."

Article XI, § 12: "The legislature shall have no power to impose taxes upon counties, cities, towns, or other municipal corporations, or upon the inhabitants or property thereof, for county, city, town, or other municipal purposes, but may by general laws vest in the corporate authorities thereof the power to assess and collect taxes for such purposes."

The fourteenth amendment to the constitution, amending certain sections of Art. VII thereof, reads in part as follows:

"All taxes shall be uniform upon the same class of property within the territorial limits of the authority levying the tax and shall be levied and collected for public purposes only."

Respondent also contends that the title to chapter 181, Laws of 1939, p. 549, is not broad enough to include the proviso above-quoted from § 4 of the act, and that § 27 of the act, p. 562 (Rem. Rev. Stat., Vol. 7A (Sup.), § 6600-22a), appropriating from the motor vehicle fund $5,500,000 for the purposes of the act, does not warrant in law the payment of the voucher drawn by relator, as city treasurer, above referred to. It is also contended that the voucher submitted was incorrect in form and insufficient in substance.

Section 27 of the act above referred to reads as follows:

"For cities and towns, including cooperation with the Federal or state government or any agency thereof authorized by law, and for all other proper street purposes, including location, right of way, engineering, improvement, construction, reconstruction and maintenance of city streets, for payment of interest and principal of bonds issued for street purposes, as by law provided, there is hereby appropriated from the motor vehicle fund for the reimbursement of cities and towns for the biennium ending March 31, 1941, the sum of five million five hundred thousand dollars ($5,500,000), or so much thereof as shall become available."

It may well be contended that § 27, *supra,* appropriating moneys from the motor vehicle fund for cities and towns, does not make any provision for the purpose referred to in the proviso above-quoted from § 4 of the act, § 27 containing no reference to any such matter as the repayment to individuals of amounts paid on account of the assessments for the improvement of Aurora avenue, referred to in the proviso. For the reasons hereinafter stated, we find it unnecessary to decide whether or not the appropriation is sufficient. We are of the opinion that the title of the act is sufficient to cover the subject matter of the proviso.

The assessments for the improvement of Aurora avenue, referred to in the proviso, were regularly levied pursuant to law. The assessments by way of condemnation for the improvement of Aurora avenue amounted to $666,776.75; the assessments for paving for that portion of Aurora avenue south of the George Washington Memorial bridge amounted to $82,400.77; and the assessments for paving north of the bridge amounted to $95,639.37. The assessment roll in connection with the condemnation proceeding was presented to the superior court, and, after a lengthy

hearing, the court ordered a blanket reduction of fifty per cent for the benefit of all property in the assessment district. From the order confirming the assessment roll as reduced, many property owners appealed to this court, with the result that the order of confirmation was affirmed. *In re Aurora Avenue,* 180 Wash. 523, 41 P. (2d) 143, 96 A. L. R. 1374. Many questions were presented and discussed at length in the opinion. Summing up the situation, we said:

"We are satisfied that the assessments made in this proceeding were neither arbitrary nor capricious. On the contrary, we think the commissioners exercised sound judgment and acted on a fundamentally correct basis in creating the district and in assessing benefits."

The matter of the assessments for the condemnation in connection with the improvement of Aurora avenue was, in the proceeding above referred to, judicially reviewed, resulting in a decision upholding the assessments and declaring that they were in all respects levied according to law, and were based upon appropriate benefits to the property assessed.

As to the assessments levied for the physical improvements of Aurora avenue, it must be assumed that the statutory procedure governing assessments for local improvements has been followed. Rem. Rev. Stat., § 9373 [P. C. § 1009], provides for the filing of the assessment roll with the city clerk, and for a hearing thereon before the city council, which may revise or modify the roll, and shall, unless the roll is rejected *in toto,* confirm the same by ordinance. The roll may be brought before the superior court for review, as provided in Rem. Rev. Stat., § 9374 [P. C. § 1010]. If no appeal be prosecuted to the superior court, the approval of the roll by the city council is conclusive upon all parties. Rem. Rev. Stat., § 9375 [P. C. § 1011].

In the case of *State ex rel. Johnson v. Dayton,* 200 Wash. 91, 93 P. (2d) 909, we quoted from the last men-

tioned section of the statute, assuming that the action of the legislative body of the city, when it became final, was conclusive upon all parties.

The record before us is absolutely silent as to the nature of the proceedings, if any, taken before the city council, or before the superior court, if any appeal was prosecuted to that court, in connection with the rolls for the two improvement districts. Whether they became final by reason of appropriate action by the city council, or by order of the superior court, the effect is the same. The assessments became valid and binding, and, since the date of such final action, have not been subject to attack. The assessments levied in connection with the two local improvement districts have been as finally adjudicated as have the assessments in the condemnation proceeding, which were finally determined by judgment of this court in the case cited.

By the fourteenth amendment to our state constitution, it was expressly declared that all taxes shall be levied and collected for public purposes only. Doubtless this doctrine inhered in the constitution before the adoption of this amendment, but it was directly stated thereby. Can it be held that the expenditures called for by the proviso above quoted from § 4, chapter 181, Laws of 1939, are expenditures for a public purpose, or, on the other hand, does the proviso direct the expenditure of public money, raised by taxation, for a private purpose? The motor vehicle fund, from which, by the the terms of the act, the money will be expended, is maintained by funds derived from the gasoline tax, the fund being permanent in its nature, and by the terms of chapter 111, Laws of 1935, p. 279, in so far as incorporated cities and towns are concerned, shall be available

". . . for the construction, alteration, repair, improvement and maintenance of the streets of such cities and towns forming a part of the route of any primary road or extension thereof into or through such city or town." Laws 1935, chapter 111, p. 282, § 6.

By Laws of 1939, chapter 181, p. 549, § 1 (Rem. Rev. Stat., Vol. 7A (Sup.), § 6600-1 [P. C. § 2696-121]), the motor vehicle fund was continued as a permanent fund

". . . for the use of counties, cities and towns, for proper road, street and highway purposes, and for credit to the 'General Obligation Bonds of 1933 Retirement Fund.'"

The proviso, of course, does not purport to direct the expenditure of any money for the purposes referred to, or any thereof.

In view of the judicial proceedings which culminated in the decision of this court *In re Aurora Avenue, supra,* and the proceedings by which the assessments in the other two local improvement districts became final, whatever those proceedings were, we cannot now sustain the proviso on the basis of any assumption that the assessments therein referred to were, for any reason, invalid, or unjustly made because in excess of the benefits resulting from the improvement to the particular parcels of property against which the assessments were levied. Neither is there ground for holding that assessments were levied or payments made upon the basis of any mistake or error of fact or law. The assessments were subject to attack before the superior court upon any legal ground, and it must be assumed that every possible objection was urged against their validity. The superior court upheld the assessments as modified, and on appeal the judgment of that court was here affirmed.

According to the fourteenth amendment to the state constitution, all taxes shall be levied and collected for public purposes only, and the levy or collection of

taxes for private purposes is thereby forbidden. This provision of our constitution does not expressly prohibit the legislature from appropriating public funds for private purposes, the amendment referring only to the levy and collection of taxes. It must be held, however, that the same limitation is imposed upon the expenditure of public money as is imposed upon the levy and collection of public money by taxation, and that a legislative appropriation of funds derived from taxes for a private purpose is in violation of the constitutional provision. If this did not follow, an appropriation of public moneys might be made for a private purpose, and the money so appropriated be replaced by taxation, which would, in effect, be the use of money raised by taxes, for private purposes. Since money can be raised and collected by taxation only for public purposes, it follows that such funds can be appropriated only for public purposes.

Prior to the enactment of the fourteenth amendment, this court considered the same limitation of the power to tax as inherent in our constitution, based on the due process clause, the principle having been considered as applying with equal force to appropriation acts and to taxation statutes. *State ex rel. State Reclamation Board v. Clausen,* 110 Wash. 525, 188 Pac. 538, 14 A. L. R. 1133; *State ex rel. Hart v. Clausen,* 113 Wash. 570, 194 Pac. 793, 13 A. L. R. 580.

In the case of *William Deering & Co. v. Peterson,* 75 Minn. 118, 77 N. W. 568, an appropriation act was held unconstitutional. The court said:

"Taxation cannot be imposed for a private purpose, and, if the state can appropriate for a private purpose the money in its treasury and then replace it by taxation, it can do indirectly what it cannot do directly."

In the case of *State ex rel. Govan v. Clausen,* 108 Wash. 133, 183 Pac. 115, this court, by writ of mandate

directed to the state auditor, directed the issuance of a warrant pursuant to an act of the legislature appropriating twelve thousand dollars

" ' . . . from the public highway fund for the relief of David Govan for services performed and materials furnished the state, for which he has not been paid.' "

In his answer, the state auditor alleged that Govan had contracted with the state to perform work on state roads; that he had furnished labor and material under the contract, completed the same, and approved a final estimate therefor; that the amount due had been paid to Govan's assignee; that by this payment all sums due on the contract had been paid; and that by the appropriation the legislature attempted to grant to Govan extra compensation, in violation of the state constitution. The relator demurred to the answer, and this court, in granting the writ, refused to act as a trier of fact, saying that to do so would impliedly impeach the declared judgment of the legislative branch of the government.

In the case at bar, it must be held that all of the Aurora avenue assessments have become final and not subject to attack, either by action of the judicial branch of our state government, as in the assessments for the condemnation, or by action of the legislative body of the city as to the two assessments for physical improvement of the highway. The proviso does not purport to state the contrary, nor does it make any statement concerning the reason for the appropriation.

In the *Govan* case, the respondent did not allege that it had been, in some previous judicial proceeding, determined that the state was not indebted to Govan, the answer merely alleging that Govan had approved a final estimate (not a release), the allegation that Govan had been paid in full being merely a conclusion.

In the case of *State ex rel. Lister v. Clausen,* 108 Wash. 146, 183 Pac. 120, an original proceeding before this court, in which a writ of mandate was sought to require the state auditor to issue a warrant pursuant to an appropriation of five thousand dollars from the general fund, " 'for the relief of Ernest Lister,' " this court relied upon the *Govan* case, *supra,* and held the appropriation valid, for the reasons stated in the case cited.

In the case of *State ex rel. State Reclamation Board v. Clausen, supra,* this court granted relator's application for a writ of mandamus filed in this court, holding that a warrant drawn against the state reclamation revolving fund for the purchase of land, pursuant to chapter 188, Laws of 1919, p. 583, was constitutional, and that the appropriation was for a public purpose. This court reaffirmed its adherence to the rule that a statute should not be declared unconstitutional unless such a holding is clearly required, and that this rule applies with peculiar force to the question of whether or not a legislative act authorizing the levy of a tax and the expenditure of public money so raised was for a public purpose. The court was of the opinion that it should not be held that the expenditure of public funds called for by the act was for other than a public purpose.

In the case of *State ex rel. Hart v. Clausen, supra,* this court held valid an act of the legislature known as the veterans' equalized compensation act, enacted at the extraordinary session of the legislature in 1920, and approved by the voters of the state November 2, 1920, found in Laws of 1920, Ex. Ses., chapter 1, p. 7. Upon application for a writ of mandamus filed in this court, a writ was issued directing the state auditor to issue a warrant pursuant to the act, this court being of the opinion that a moral obligation on the part of

the state to recognize the services of its citizens in the armed forces of the United States during the World War was sufficient to sustain the taxing power of the state. This latter case falls within a well-recognized class in which acts for the relief of veterans, enacted after the service was rendered, have been held valid.

■ If it be suggested that the fourteenth amendment to the state constitution applies only to taxes levied against property, as that word is defined in the amendment, and that such taxes as support the motor vehicle fund are neither property taxes nor are they levied, such an argument would be untenable. The first sentence of the amendment reads as follows: "The power of taxation shall never be suspended, surrendered or contracted away." This, of course, refers to all taxes collected by the state, including property, excise, and all other taxes. The amendment, then, in scope covers all the state's power to levy taxes.

In the second sentence of the amendment, above quoted, the opening words "all taxes" apply to the first clause of the sentence, and also to the last clause, "shall be levied and collected for public purposes only."

In referring to privilege taxes, the state sales tax, and similar exactions, this court has repeatedly referred to such taxes as "levied." *Shell Co. v. State,* 113 Wash. 632, 194 Pac. 835; *Morrow v. Henneford,* 182 Wash. 625, 47 P. (2d) 1016; *Spokane v. State,* 198 Wash. 682, 89 P. (2d) 826. The legislature, in Laws of 1935, chapter 180, p. 726, § 31, relating to the compensating tax, used the word "levied," and the same word is found in Rem. Rev. Stat. (Sup.), § 8327-23 [P. C. § 7068-93] (Laws of 1933, chapter 58, p. 326, § 23), referring to the gasoline tax.

In the case of *State ex rel. Hamilton v. Martin,* 173 Wash. 249, 23 P. (2d) 1, this court, in considering chap-

ter 65, Laws of 1933, p. 336, and chapter 8, Laws of 1933, p. 103, known, respectively, as the "bond act" and the "relief act," held the last act constitutional, after considering the fourteenth amendment in connection with the problems presented. A portion of the revenues accruing to the motor vehicle fund were appropriated to the retirement of bonds issued pursuant to the relief act. From the opinion in the latter case, it is evident that this court considered the fourteenth amendment as applying to revenues accruing to the motor vehicle fund with which we are here concerned.

■ Article II, § 28, of our state constitution, prohibits the legislature from enacting any private or special laws in enumerated cases, subd. 10, *supra,* reading as follows:

"Releasing or extinguishing, in whole or in part, the indebtedness, liability, or other obligation of any person or corporation to this state, or to any municipal corporation therein."

It was obviously the intent of this subsection to prohibit the legislature from, by special laws, favoring any debtor or group of debtors obligated to the state or any municipal subdivision thereof. It supplements Art. VII, § 2, as amended by the fourteenth amendment above referred to, providing for the uniformity of taxes, and protects the taxpayer from legislative action designed to shift to one group a disproportionate burden of taxation by releasing or extinguishing, by special statutes, the tax obligations of a favored group. The theory embodied in the fourteenth amendment and the sections of article VII which it superseded, would not be satisfied by the mere levy of uniform taxation. Its obvious purpose can be carried out only by the collection of taxes so levied. The operation of subd. 10 is not limited to tax obligations; it

applies to all "indebtedness, liability, or other obligation." It is one of eighteen constitutional prohibitions against special legislation, all of which tend to protect the people of the state as a whole from legislative favoritism of an individual or a group.

By the proviso of § 4, which relator here seeks to enforce, proceeds of the gasoline tax allocated to the motor vehicle fund are appropriated to the payment of unpaid Aurora avenue assessments, which are valid liens against property in the assessment district, and to the reimbursement of individuals who have paid such assessments, all of which assessments having, by judicial decree, or other equally binding proceedings, been declared lawful. Payment of the unpaid assessments out of the motor vehicle fund certainly extinguishes such assessments and the lien thereof, within the constitutional prohibition above referred to.

Relator frankly concedes that, if the appropriation which relator seeks to enforce is for a private, as opposed to a public, purpose, that portion of the statute above referred to upon which relator relies is unconstitutional. It is not contended that the appropriation as made was for the purpose of discharging a legal obligation, binding upon the state, relator contending that the public purpose necessary to sustain the appropriation is found in existing moral obligations, resting apparently upon the theory that it was unfair to the property owners concerned to specially assess their property on the theory that the same was specially benefited by the improvement of Aurora avenue.

Relator argues that, because the legislature might originally have appropriated the entire cost of the improvement from the motor vehicle fund, it may now reimburse private individuals who, by way of assessments on their property, have paid a portion of the cost, and that for this reason the proviso should be

held a constitutional exercise of legislative prerogative. The answer to this argument is that the legislature did not appropriate from the motor vehicle fund the entire cost of the improvement, but left a portion to be paid by special assessments against property which it assumed would be benefited. As above stated, pursuant to the program outlined and followed, these assessments have been held valid. It consequently does not follow that what the legislature might have done when the work was ordered, it can do now, in violation of constitutional prohibition.

In the case of *State ex rel. Hart v. Clausen, supra,* this court held valid the veterans' equalized compensation act above referred to, holding that the moral obligation on the part of the state to recognize the services of its citizens in the armed forces of the United States during the World War was sufficient to support an appropriation of funds derived from taxation. As above stated, this case falls within the well-recognized class in which statutes for the relief of veterans, enacted after the service was rendered, have been held valid. Apparently this is the only case in which this court has upheld an appropriation from tax funds, based solely upon a moral obligation. This principle may have been involved in the cases of *State ex rel. Govan v. Clausen, supra,* and *State ex rel. Lister v. Clausen, supra,* but it seems more probable that the appropriations involved in those cases were based upon unadjudicated legal claims against the state. The *Lister* case was based upon the *Govan* case, in which certainly there was an unadjudicated dispute between Govan and the state.

We are in complete accord with the principle announced in the case of *Farquharson v. Yeargin,* 24 Wash. 549, 64 Pac. 717, to the effect that all presumptions must be indulged in, in favor of the constitution-

ality of a legislative act, and that, where possible, it will be presumed that the legislature has affirmatively determined any special facts requisite to the validity of the enactment, even though no legislative finding of fact appears in the statute.

We are also in accord with the rule announced in the case of *State ex rel. State Reclamation Board v. Clausen, supra,* where we approved the rule that a statute should not be declared unconstitutional unless such a holding is clearly required, and that this rule applies with peculiar force to the question of whether or not a legislative appropriation of public moneys is for a public purpose.

In the instant case, the legislature made no statement of fact whatever as to any supposed moral obligation or other basis which suggests that the appropriation here in question was for a public purpose. We are unable to find any possible state of facts which, if assumed to exist, would support the appropriation as an obligation of the state, legal, equitable, or moral. It cannot be presumed that the property assessed was not specially benefited by the improvement, to the extent of the original assessment, because that matter has been conclusively determined by valid legal proceedings. Neither can it be assumed that the assessments were for any reason invalid, irregular, or based upon mistake or error of fact or of law. The condemnation assessments were subject to attack before the superior court upon any ground, and were vigorously attacked, with the result that the superior court reduced them by fifty per cent. On appeal, this judgment was affirmed by this court. The improvement assessments were also subject to attack, and were finally and definitely held valid. Where a taxing enactment is valid and lawful, the

final determination of tax liability, made in accordance with statutory procedure, cannot subsequently be impeached, either by the courts or by the legislature. *In re Greene,* 166 N. Y. 485, 60 N. E. 183.

In the case of *Board of Education v. Talbott,* 261 Ky. 66, 86 S. W. (2d) 1059, the court of appeals of Kentucky, in holding a remedial act of the legislature unconstitutional, used the following language:

"In determining whether the Legislature may make an appropriation, or direct a tax to be levied, to pay a moral claim, the question arises in every case as to whether the particular claim is a moral one for which the state or other political division may appropriate the money or levy the tax.

"The act of 1934 is a legislative declaration that the court's decision in holding the act of 1930 invalid, because the Legislature had no constitutional power to distribute the school fund, when paying teachers' salaries, except on a per capita basis, was erroneous. It in effect declares the 1930 act good and valid, and manifestly regards omissions or irregularities in its passage as the basis of the court's conclusion. The 1930 act was not declared invalid because of legislative omissions or irregularities, but solely because the Legislature was expressly prohibited by the Constitution from so appropriating and distributing the common school fund as therein authorized and directed."

An unjustifiable preference for the benefit or relief of one special group of taxpayers, to the detriment of all other taxpayers, cannot be upheld as based upon a moral obligation, and for that reason for a public purpose.

We are convinced that the proviso contained in § 4, chapter 181, Laws of 1939, upon which relator relies, is unconstitutional and void, as in violation of the fourteenth amendment of the state constitution, and of Art. II, § 28, subd. 10.

This renders it unnecessary to discuss other objections to the proviso, urged by respondent.

Writ denied.

ROBINSON, C. J., MAIN, STEINERT, BLAKE, SIMPSON, DRIVER, and JEFFERS, JJ., concur.

MILLARD, J., dissents.

